**Doris J. POWELL, Appellant,**

v.

**James Scott POWELL, Appellee.**

**No. 2001–SC–0800–DG.**

Supreme Court of Kentucky.

June 12, 2003.

As Amended Aug. 8, 2003.

Gordon J. Dill, Jr., Gordon J. Dill, PSC, Ashland, Counsel for Appellant.

Jeffrey L. Preston, Catlettsburg, Counsel for Appellee.

Opinion of the Court by Justice STUMBO.

This matter comes to us on appeal from a Court of Appeals' opinion affirming the Boyd Circuit Court's order of maintenance in accordance with the Domestic Relations Commissioner's (Commissioner) report. We granted discretionary review and find that the Boyd Circuit Court abused its discretion in adopting the Commissioner's report regarding the determination of the amount and duration of maintenance awarded to the appellant herein. Accordingly, we reverse and remand.

The parties were married in 1980 and were divorced per decree of the Boyd Circuit Court on April 3, 1998. The parties entered into an agreement with regard to the division of real and personal property, custody of the minor child, and support of said child. The parties reserved the issues of maintenance, attorney fees, and costs for an evidentiary hearing before the Commissioner. Subsequently, the Commissioner recommended that Dr. Powell pay all attorney fees and costs of litigation, and awarded to Ms. Powell $3,000.00 per month in maintenance for the duration of three years. Both parties filed timely exceptions to the Commissioner's findings and the trial court overruled those exceptions without comment, adopting the Commissioner's report in full. Ms. Powell appealed the trial court's ruling and the Court of Appeals affirmed, stating that although if they had tried the case they would have likely awarded more in maintenance, they did not find the trial court's ruling to be an abuse of discretion.

Kentucky Revised Statute (KRS) 403.200 governs spousal maintenance and reads in part:

(1) In a proceeding for dissolution of marriage ... the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment ....

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ...;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

■ While the award of maintenance comes within the sound discretion of the trial court, a reviewing court will not uphold the award if it finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous. *Perrine v. Christine*, Ky., 833 S.W.2d 825, 826 (1992); *Browning v. Browning*, Ky.App., 551 S.W.2d 823, 825 (1977). In the case at bar, we believe the trial court did abuse its discretion in awarding Ms. Powell only $3,000.00 per month for the duration of three years in light of the factors enumerated in KRS 403.200. We find the trial court's decision to limit the amount and duration of maintenance particularly unjust considering Dr. Powell's substantial income and the gross disparity of that income compared with Ms. Powell's potential income.

■ The record shows that Dr. Powell is the sole owner of a professional service corporation that had net earnings of $63,992.99 for the eleven months ended November 30, 1999. Dr. Powell personally grossed $565,510.52 in salary for the eleven months ended November 30, 1999. In contrast, Ms. Powell, although holding a master's degree in nursing, has been out of the workforce since 1987, primarily for the purpose of raising the parties' minor child. The Commissioner found that the evidence suggested that Ms. Powell would be capable of earning anywhere from $20,000.00 to $45,000.00 per year after completing 150 hours of continuing education courses. However, there was also evidence that Ms. Powell, who is now around fifty years old, had suffered from back injuries that could limit her ability to work as a nurse in a traditional setting.

■ KRS 403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely. *Clark v. Clark*, Ky.App., 782 S.W.2d 56, 61 (1990). However, "in situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal," our courts have declined to follow that policy and have instead awarded maintenance for a longer period or in greater amounts. *Id.* Further, KRS 403.200 specifically states that the trial court should consider the standard of living to which the parties are accustomed in determining the amount and duration of the award. "It is especially acceptable for the trial court to consider the impact of the divorce on the nonprofessional's standard of living and award an appropriate amount that the professional spouse can afford." *Clark, supra,* at 61. We do not feel that the trial court's award of maintenance would allow Ms. Powell to continue the standard of living that the parties enjoyed while married. *See Casper v. Casper*, Ky., 510 S.W.2d 253 (1974).

■ It is clear that Dr. Powell has sufficient assets to draw from and can afford to pay more in maintenance. The parties were married for nearly eighteen years

and in fact, Ms. Powell was the primary breadwinner during Dr. Powell's residency and internship. During the latter years of the marriage, the parties had been able to enjoy the fruits of a growing neurosurgery practice which no doubt afforded them a fairly luxurious lifestyle. While a court should not grant maintenance solely because the nonprofessional spouse helped to financially support the professional spouse in the attainment of his or her degree, "these efforts should be considered and compensated especially if the spouses' incomes or salaries are uneven." *Clark, supra,* at 61.

■ There was evidence in the record that Ms. Powell could earn up to $45,000.00 per year after completing certain continuing education requirements. The Commissioner's report found that Ms. Powell could adequately support herself with the $3,000.00 per month, along with income from the $360,000.00 awarded to Ms. Powell in the property settlement, if invested at a reasonable rate of return. While it is reasonable for the Commissioner to rely on the income generated from the investment of sums from a property settlement in determining maintenance, we do not impose a duty to invest all proceeds from a cash settlement in order to reduce the amount of spousal maintenance required for one's needs. *Atwood v. Atwood,* Ky.App., 643 S.W.2d 263, 265 (1982). The record shows that Ms. Powell would be receiving no equity from the sale of the marital home, and therefore, a portion of the property settlement funds would likely be expended on acquiring a new residence. Consequently, the Commissioner's reliance on the flow of income received from the investment of the entire $360,000.00 award may be overstated.[1]

The Commissioner found that it would take one year or less to complete the continuing education requirements, and therefore at the end of the three-year period, Ms. Powell could be earning up to $45,000.00 per year. This amount, however, is still less than Dr. Powell earns in one month. Therefore, considering the great disparity in incomes, the eighteen year marriage, and the fact that Ms. Powell supported Dr. Powell financially throughout his residency and internships, we find the trial court's order of maintenance to be unjust and an abuse of discretion.

We also note for the trial court upon remand that Dr. Powell's monthly expenses, totaling $34,087.00, were somewhat inaccurate. Specifically, his submitted budget included the $2,973.00 mortgage payment on the marital house that was to be sold, and a $2,500.00 monthly payment for the college fund of the parties' child that apparently did not exist at the time the budget was submitted. We also suggest the trial court further investigate the two mortgages on Dr. Powell's investment property that were being used as saving mechanisms to generate equity. Such, if used as investment mechanisms, are not properly characterized as monthly expenses and their removal from the budget would reduce Dr. Powell's expenses by $7,221.00 per month. Although the Commissioner did not specifically address Dr. Powell's ability to meet his own needs while meeting those of the spouse seeking maintenance, these factors should be re-

1. The Commissioner does not make specific findings regarding the amount of return expected from said investment. However, we can only conclude that the Commissioner estimated a rate of return of 8% on the entire $360,000.00, which would provide Ms. Powell with income of $2,400.00 monthly. This amount combined with the $3,000.00 monthly maintenance award, totals $5,400.00, the exact amount that Ms. Powell submitted as her monthly expenses.

considered upon remand in light of the above-stated inaccuracies.

■ Lastly, Ms. Powell argues that the Commissioner failed to consider her net income when he found that Ms. Powell "should be able to adequately maintain herself in accordance with the budget presented ...." The Court of Appeals stated that it knew of no authority that required it to consider net income when making maintenance determinations. We think that common sense dictates that a court consider the parties' net income when determining whether or not the spouse seeking maintenance will be able to meet his or her needs, as well as the payor spouse's ability to continue meeting his or her own needs. Indeed, our courts do consider tax implications to parties in the valuation and division of the marital property, and in determining the appropriate time to require a party to liquidate or transfer capital assets. *See Clark, supra,* at 61 (stating that the post-divorce tax positions of the parties must be considered); *Broida v. Broida,* Ky., 388 S.W.2d 617, 621 (1964) (stating that "even in the event of periodic alimony common sense requires that consideration be given to the post-divorce tax positions of the parties, to the end that the payments may be so balanced as to leave a maximum of tax-free dollars to both"). Accordingly, we do not consider it a great leap to also hold that the trial court should consider the after-tax income of both parties in determining the proper amount and duration of maintenance to be awarded.

For the reasons set forth above, we reverse the order of the Boyd Circuit Court with regards to the amount and duration of maintenance payments with directions that the order be amended in conformity with this opinion.

LAMBERT, C.J.; COOPER and GRAVES, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

KELLER, J., concurs in part and dissents in part by separate opinion, with JOHNSTONE, J., joining that separate opinion.

Opinion by Justice KELLER, concurring in part and dissenting in part.

Although I agree with the majority that we must remand this case for the trial court to reevaluate the amount and duration of maintenance after determining the parties' post-tax, net incomes, I disagree with the majority's characterization of the trial court's maintenance award as insufficient to "allow Ms. Powell to continue the standard of living that the parties enjoyed while married" [1] and thus "unjust and an abuse of discretion." [2] Although this Court once reasoned that "what might be ample for a scullery maid is not necessarily sufficient for one accustomed to the lifestyle of a duchess," [3] the "standard of living established during the marriage" is just one of many factors that a trial court must consider in determining a "just" maintenance award [4]—not, as the majority opinion appears to suggest, the sole determinative factor. And, as "few couples can maintain separately the standard of living

---

1. *Majority Opinion,* 107 S.W.3d 222, 224 (2003).

2. *Id.* at 225.

3. *Casper v. Casper,* Ky., 510 S.W.2d 253, 255 (1974).

4. KRS 403.200(2); *Casper v. Casper, supra* note 3 at 255 ("KRS 403.200(2) specifies *a number of relative factors to be considered* in determining the amount of maintenance, *including* the 'standard of living established during the marriage.' " (emphasis added)).

that they enjoyed as a single household,"[5] even a duchess may discover that it is simply impossible for her to enjoy a post-dissolution lifestyle similar to the one she enjoyed while married to the duke. Accordingly, a "more accurate rule regarding maintenance would be that in most cases a long-term homemaker may not be left in financial circumstances radically disparate from those of her former spouse."[6] In any event, the trial court in this case appears to have determined that the $5,400.00 per month budget—*that Appellant herself proposed*—was a sufficient amount to provide "for [her] reasonable needs,"[7] and therefore, a just amount considering "[t]he standard of living established during the marriage."[8] And, if that is the case, then I find nothing clearly erroneous about the trial court's determination.

My concern, however, is that the trial court's findings of fact are insufficient for us to evaluate whether Appellant will have sufficient income, including the maintenance awarded, to cover her monthly reasonable needs.[9] I would thus remand this matter to the trial court for it to make explicit findings of fact as to "[t]he financial resources of the party seeking maintenance, including marital property apportioned to [her], and [her] ability to meet [her] needs independently."[10] In my view, the trial court should make findings as to: (1) the amount necessary to provide for Appellant's reasonable needs; (2) the amount of after-tax income Appellant could realize each month from employment and from investment of the property that she received in the parties' property settlement agreement;[11] (3) Appellant's prospects for eventual economic self-sufficiency through additional education; and, (4) although it does not appear to be a matter in dispute, Appellee's ability to pay maintenance.[12] After making these determinations, the trial court should exercise its discretion and determine whether and to what extent rehabilitative maintenance, permanent maintenance, or both are necessary to balance the ledger.

JOHNSTONE, J., joins this opinion, concurring in part and dissenting in part.

5. Louise E. Graham and James E. Keller, 16 Kentucky Practice: Domestic Relations Law, § 16.7 at 10 (2d. ed. West 1997).

6. *Id.* § 16.7 at 10–11.

7. KRS 403.200(1)(a).

8. KRS 403.200(2)(c).

9. *See Perrine v. Christine*, Ky., 833 S.W.2d 825, 826 (1992) ("[T]he trial court has dual responsibilities: one, to make relevant findings of fact; and two, to exercise its discretion in making a determination on maintenance in light of those facts.").

10. KRS 403.200(2)(a).

11. Although one of Appellant's primary arguments appears to be that she cannot invest all of the $360,000.00 she received in the property settlement agreement because she must utilize a portion of that amount to purchase a suitable residence, I would observe that the purchase of a residence would constitute an investment that would offset, in whole or in part, budgeted-for rent or mortgage payments.

12. KRS 403.200(2)(f).