RENDERED:  SEPTEMBER 11, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2019-CA-000939-MR
AND 2019-CA-000992-MR

VALARIE ANN NARAMORE          APPELLANT/CROSS-APPELLEE

APPEAL AND CROSS-APPEAL FROM BOYD CIRCUIT COURT
v.          HONORABLE JOHN F. VINCENT, JUDGE
ACTION NO. 18-CI-00142

DAVID DOWNEY NARAMORE          APPELLEE/CROSS-APPELLANT

OPINION
VACATING & REMANDING

** ** ** ** **

BEFORE:  COMBS, JONES, AND MCNEILL, JUDGES.

JONES, JUDGE:  On June 20, 2019, the Boyd Circuit Court entered findings of

fact, conclusions of law, and a decree of dissolution of marriage in the above-

styled action.  As part of the decree, the circuit court awarded the Appellant/

Cross-appellee, Valarie Naramore, monthly spousal maintenance of $1,500.00

until such time as she remarries, cohabitates, or "is of the age to receive Social

Security or until further orders of the court should [she] qualify at an [earlier] age for Social Security disability benefits." On appeal, both parties challenge the amount and duration of the circuit court's maintenance award. Having reviewed the record and being otherwise sufficiently advised, we VACATE the circuit court's decree with respect to the amount and duration of maintenance and REMAND for entry of a new maintenance award in accordance with this opinion.

## I. BACKGROUND

David and Valarie Naramore were married on February 20, 1998, in Sevier County, Tennessee. They had one child together during their marriage; additionally, each had a child from a previous relationship. Initially, Valarie and David made their home in Louisiana where they lived for approximately fourteen years. Sometime around 2012, David and Valarie moved to Kentucky after David's employer, Marathon Petroleum Corporation ("Marathon"), transferred David to its Kentucky facility. The couple purchased a home in Boyd County, Kentucky, which became their marital residence. They were still residing together in that home at the time Valarie filed for dissolution of the marriage in February of 2018.

Since the parties' son was over eighteen by this time, child support and custody were not at issue in the dissolution, leaving only issues related to property division, spousal maintenance, and Valarie's attorney's fees to be decided

by the circuit court. On March 2, 2018, the circuit court referred the parties' dissolution to a domestic relations commissioner ("DRC") for a report and recommendation. The DRC conducted a final evidentiary hearing on March 28, 2019.

The hearing was remarkably amicable. David and Valarie were both present and testified. Additionally, Jessica Rakes, a physician's assistant who had been treating Valarie, testified by telephone about Valarie's various physical and mental conditions and their effect on Valarie's ability to work. Without objection, Valarie also introduced records from Regional Psychotherapy Services, Inc., where she was being treated for bipolar disorder, anxiety disorder NOS, and attention deficit disorder hyperactive type, including a letter dated July 10, 2018, opining that Valarie's psychological issues made it unable for her to maintain gainful employment. Ms. Rakes also testified that she did not believe Valarie was capable of working.

Valarie testified that she had not worked since the parties left Louisiana, and that she did not believe she was capable of maintaining steady employment at this time due to her physical and mental health issues. Valarie testified that after the dissolution she would not have a personal support system in Kentucky and would not have anywhere to live in Kentucky. As a result, after the dissolution was final, she planned to move to Oklahoma City to be closer to her

adult daughter from a previous relationship. She requested that her jewelry, some furniture, and a few other items of personal property be awarded to her. She did not want the marital residence, the parties' camper, or any of their vehicles. She agreed that one of the vehicles should be given to the parties' son and that David should be awarded the other vehicle. She requested that the marital home and camper be awarded to David and that he be ordered to pay half of the marital equity in those assets to her. She also requested that she be awarded half of the marital value of David's retirement accounts consisting of two 401(k)s and a separate pension account. Valarie agreed that credit card debt of approximately $7,000.00 should be assigned to her because the debt was incurred by her to pay for her daughter's education.

Valarie testified that the parties enjoyed a middle-class lifestyle during their marriage. They lived in a nice home, were able to provide for their son, took vacations, and were able to pay their bills without difficulty. Without maintenance, Valarie did not believe she would be able to maintain a lifestyle anywhere close to the lifestyle she enjoyed during the parties' twenty-year marriage.

Valarie testified that she had done some research into what her living expenses in Oklahoma City would be after the dissolution was final. She estimated her monthly expenses would likely be about $3,555.00 broken down as follows:

(1) credit card payment-$170.00; (2) cable/internet-$200.00; (3) gas-$75.00; (4) electric-$150.00; (5) medical insurance-$500.00 plus; (6) housing-$700.00; (7) water-$55.00; (8) cell phone-$190.00; (9) trash-$30.00; (10) groceries-$300.00; (11) prescriptions-$300.00; (12) medical expenses-$350.00; (13) haircut-$35.00; (14) car fare[1]-$300.00; and (15) entertainment-$100.00. Based on these expenses, Valarie requested an open-ended maintenance award of $3,555.00 per month.

David testified that he agreed with the proposed personal property distribution Valarie submitted to the DRC. David testified that in conjunction with the dissolution, the marital residence was appraised at $125,000.00. The parties agreed with the appraisal. David further testified that the balance of the mortgage for the marital property was $92,862.00. David was willing to assume all the remaining debt on the property, refinance it in his name, and pay Valarie one-half of the marital equity in the home. David testified that the parties owned a 2008 Passport Ultra Lite camper for recreational use that had a resale value of approximately $5,360.00. David agreed that he should be awarded the camper and that Valarie should receive half of the parties' equity in it.

---

[1] When questioned, Valarie explained that her ailments rendered her unable to drive and that while her daughter would be able to help her some, she would have to secure her own transportation because her daughter had two young children and could not take her everywhere she would need to go during the day.

David testified that during the marriage he worked at both Trinity Marine and Marathon and had 401(k) plans from both employers in addition to a pension from Marathon. David explained that he worked for Trinity Marine ten years before he married Valarie and another ten years after, for a total of twenty years. The value of David's Trinity Marine 401(k) at the time of the hearing was $114,603.05. After leaving Trinity Marine, David began working for Marathon. At the time of the dissolution hearing, David had been working for Marathon for a little over ten years. David's Marathon 401(k) was valued at $248,745.99, and he agreed that it was all marital. David testified he also had a Marathon pension worth $128,547.80. David testified that it was his understanding that after entry of a court order Valarie would be able to get a lump sum for her portion of the pension and the 401(k)s; however, he was unsure whether there would be any penalties assessed against Valarie if she withdrew the funds before retirement age.

David testified that his guaranteed base salary at Marathon is approximately $123,000.00 per year. In addition, he receives an annual, non-guaranteed bonus. The last bonus he received was $14,000.00. The only marital debt was the credit card debt Valarie agreed to assume and the mortgage on the marital residence. David did not testify as to his monthly expenses aside from having a mortgage payment on the marital residence and corresponding utility bills. David agreed that Valarie needed some maintenance to provide for herself

but did not specify an amount he thought would be sufficient. He believed that maintenance should only be awarded until Valarie was eligible to receive retirement or disability benefits. Finally, David testified that he had already paid $2,000.00 toward Valarie's attorney's fees, and he did not believe he should be required to pay any additional fees because Valarie would have enough money from the property settlement to pay them herself.

The DRC entered its report and recommendation on May 15, 2019. The DRC accepted the parties' agreement with respect to the division of their personal property and recommended that the parties' personal property be awarded in accordance with their agreement. The DRC determined that the parties' camper was worth $5,360.00, the value testified to by David, and recommended that David be awarded the camper and ordered to pay Valarie one-half of its value, $2,680.00. The DRC also accepted the appraised value of the marital residence, $125,000.00, and noted that neither party objected to that value. The DRC recommended that the marital residence be awarded to David; David should refinance the property and the outstanding debt ($92,962.11) in his name; and David should pay Valarie $16,000.00, one-half of the equity in the marital residence.

The DRC determined that the Marathon 401(k) and the Marathon pension were wholly marital and should be divided equally between the parties. Based on the values submitted during the hearing, each party would receive

approximately $124,372.99 from the Marathon 401(k) and $64,273.90 from the Marathon pension. The DRC determined that the Trinity Marine 401(k) was both marital and nonmarital and that the marital portion should be divided equally between the parties. Based on David's testimony, the Trinity Marine 401(k) had a total value of $114,603.05, half of which was nonmarital, making the marital portion of the Trinity Marine 401(k) worth approximately $57,301.52. Therefore, Valarie's portion of the Trinity Marine 401(k) would be worth approximately $28,650.76.

The DRC recommended that Valarie be awarded one-half of any tax refund for the 2018 tax year. That amount was not known at the time of the hearing. The DRC also recommended that Valarie be awarded one-fourth of David's 2018 bonus, which he had not yet received, and that she receive one-half of the $14,000.00 bonus David earned in 2017.

The DRC next considered maintenance. The DRC noted that Valarie testified to monthly expenses of $3,555.00; it found that Valarie had reasonable expenses of $3,550.00.[2] Based on the testimony, the DRC found that Valarie was unable to work. As such, the DRC concluded that Valarie "is unable to meet her

---

[2] There is a five-dollar discrepancy between Valarie's submitted expenses and expenses the DRC determined were reasonable. The DRC did not explain any rationale for reducing the expenses by five dollars. Given the lack of reasoning, we suspect that this was simply a typographical error, and the DRC most likely intended the recommendation to encompass the total expenses submitted by Valarie.

reasonable needs through her employment and has no income." In contrast, the DRC noted that David was employed making a guaranteed gross salary of approximately $123,000.00 per year in addition to yearly bonuses, the last of which was $14,000.00.

The DRC did not believe it was appropriate to require Valarie to exhaust her portion of the 401(k)s and pension to meet her current needs and did not believe that the other property and cash awarded to Valarie would be sufficient to do so. The DRC ultimately recommended that David be ordered to pay Valarie $1,500.00 per month in maintenance until she remarries or cohabitates, is of the age to receive Social Security, or until further orders of the court should Valarie qualify at an early age for Social Security disability benefits.

Lastly, the DRC found that Valarie had incurred attorney's fees and costs for the dissolution in the amount of $10,468.00, and that David had already paid $2,000.00 toward Valarie's attorney's fees. The DRC ordered David to pay an additional $3,000.00 to Valarie's counsel.

Both parties filed exceptions to the DRC's report and recommendation. With the exception of a minor clarification, the circuit court accepted the DRC's report and recommendation and incorporated it into its June 20, 2019, final decree.

This appeal and cross-appeal followed with both parties asserting that the circuit court erred with respect to the amount and duration of Valarie's maintenance award.

## II. STANDARD OF REVIEW

The award of spousal maintenance "has traditionally been delegated to the sound and broad discretion of the trial court[.]" *Barbarine v. Barbarine*, 925 S.W.2d 831, 832 (Ky. App. 1996). On appeal, this Court may only disturb the award of spousal maintenance if the circuit court has "abused its discretion or based its decision on findings of fact that are clearly erroneous[.]" *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citations omitted). Abuse of discretion occurs when the circuit court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) (citation omitted).

## III. ANALYSIS

The determination of maintenance involves a two-pronged analysis. First, the circuit court must decide whether the requesting spouse is even entitled to maintenance at all by examining that spouse's financial needs and resources. *Wattenberger v. Wattenberger*, 577 S.W.3d 786, 787-88 (Ky. App. 2019). Pursuant to KRS[3] 403.200(1), the circuit court may award maintenance if it finds

---

[3] Kentucky Revised Statute.

-10-

that the spouse seeking maintenance:  (a) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (b) is unable to support herself through appropriate employment.  *McVicker v. McVicker*, 461 S.W.3d 404, 420 (Ky. App. 2015).

If, based on those factors, an award of maintenance is justified, the circuit court must then decide the appropriate amount and duration of the award while considering all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently. . .;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

David conceded that Valarie is entitled to an award of maintenance, a concession that is supported by the record.  The issue we must determine is

whether the circuit court abused its discretion with respect to the amount and duration of that maintenance.

We begin with Valarie's expenses. The DRC determined that Valarie had reasonable monthly expenses of $3,550.00. David argues that the expenses are speculative. However, Valarie testified that they were based on her preliminary research of the Oklahoma City area as well as information concerning what it would cost her to obtain insurance and what that coverage would provide to her. Notably, David did not present any affirmative evidence to contradict Valarie's estimated expenses, and his counsel spent very little time cross-examining Valarie regarding her estimates. Having reviewed the record, we cannot conclude that the circuit court erred in accepting the DRC's recommendation that these expenses were both necessary and reasonable. Therefore, we shall evaluate the maintenance award in light of these expenses.

The first factor requires a consideration of Valarie's financial resources, including marital property apportioned to her and her ability to meet her needs independently. Valarie's financial resources are extremely limited. Valarie does not appear to have any significant assets apart from what she was awarded by the circuit court in the dissolution. As part of the property settlement, David was ordered to pay Valarie a total of $33,190.00 representing her interest in the marital portions of (1) the parties' home and camper; (2) David's bonuses; and (3) certain

tax refunds. She has $7,000.00 in credit card debt and owes attorney's fees in the amount of $5,468.00.[4] Valarie's estimated expenses account for payments toward the credit card debt, but do not take into consideration the outstanding attorney's fees. Subtracting the attorney's fee balance from the total cash award leaves Valarie with $27,722.00 in cash. She testified that she will also incur moving expenses associated with relocating to Oklahoma City. Indeed, the DRC's report noted that relocating and finding suitable housing would take a significant amount of the monetary assets that had been awarded to Valarie.

Additionally, Valarie does not presently have an income-producing vocation and suffers from a myriad of medical conditions. Valarie's medical providers testified that she is unable to work; David did not produce any evidence to contradict this testimony. Additionally, Valarie has been out of the workforce since the parties moved to Kentucky several years ago.

Although David acknowledges that Valarie is unable to work at this time, he believes Valarie could meet her needs by withdrawing money or taking a lump sum payment from the 401(k)s and pension accounts awarded to her in the dissolution. He points out that Valarie's portion of these accounts totals approximately $217,297.65. During the hearing, David admitted that there could be early withdrawal penalties assessed if Valarie withdrew money from the

_____

[4] This represents the balance due after David's $7,000.00 contribution.

accounts prior to reaching retirement age. Valarie is in her fifties; she could easily live several more decades and would need those funds for her own retirement. Therefore, we agree with the DRC and the circuit court that the retirement accounts should not be considered a readily available source of income from which Valarie can meet her present-day, preretirement-age needs.

David also asserts that Valarie should be able to obtain Social Security disability income given her inability to work, and that she could use that income to meet her needs. However, Valarie's eligibility for Social Security disability benefits does not require a reduction or elimination of maintenance. *See Calloway v. Calloway*, 832 S.W.2d 890, 894 (Ky. App. 1992).

The next factor is the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment. Valarie has a teaching degree and some prior work experience. However, she has been out of the workforce for almost a decade. With additional time, she might be able to find employment. However, Valarie's current mental and physical conditions render her unable to work, and there does not appear to be any likelihood for improvement in the immediate future.

The next factors are the duration of the marriage and the standard of living the parties enjoyed during the marriage. Valarie and David were married for just over twenty years. During that time they enjoyed a solid, middle-class

-14-

lifestyle. They lived in a nice home, had a recreational camper, owned two vehicles, were able to pay their bills without difficulty, and took vacations. While their lifestyle was not extravagant by any means, it was comfortable.

The next factor is the "age, and the physical and emotional condition of the spouse seeking maintenance." Valarie is in her mid-fifties. She has numerous physical and mental health problems that prevent her from working and driving a car. She testified that she would be relying on her daughter to help her with some aspects of daily living such as cleaning.

The last factor is the "ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." David is employed at Marathon. He has a guaranteed base salary of $123,000.00, in addition to a yearly bonus. David's employment provides him with medical benefits, a pension, and a 401(k) plan. Despite the fact that David knew Valarie was seeking maintenance, he failed to present any detailed evidence concerning his expenses. He testified only that he would have a mortgage payment and utility bills associated with the residence. David argues in his brief to this Court that he has additional expenses associated with providing an education for the parties' son who is over eighteen as well as his and his son's "normal living expenses." While this may be the case, David failed to offer any testimony or evidence of such

-15-

expenses during the proceedings below, and we cannot consider it now.[5]  Based on the evidence below, it appears that David is more than capable of meeting his needs while paying the full amount of maintenance requested by Valarie.

Even though the circuit court determined that Valarie had reasonable expenses of $3,550.00, it awarded her only $1,500.00 per month in maintenance. This leaves Valarie responsible for a $2,050.00 shortfall each month.  She has only the property awarded to her in the dissolution to cover this monthly shortfall. Assuming she does not take early withdrawals from the 401(k)s and pension, she will exhaust all the cash awarded to her in just a little over a year.  In contrast, David will continue living the same lifestyle the couple previously enjoyed.

The circuit court did not offer any explanation regarding the disparity between Valarie's reasonable expenses and the maintenance payment.  It also failed to consider whether David had the ability to pay more maintenance to Valarie.  The disparity between Valarie's monthly income and David's income is enormous.  Based on this disparity and Valarie's inability to provide for herself at

---

[5] "We will not consider evidence the circuit court had no opportunity to examine." *Kindred Nursing Centers Ltd. P'ship v. Leffew*, 398 S.W.3d 463, 468 n.5 (Ky. App. 2013). *See also Stuber v. Snyder's Comm.*, 261 Ky. 338, 87 S.W.2d 614, 617-18 (1935).  Consistent with this case law, Kentucky Rule of Civil Procedure ("CR") 76.12 prohibits the inclusion in appellate briefs of any evidence that was not part of the record below and we must refrain from considering such extraneous material on appeal.  *Baker v. Jones*, 199 S.W.3d 749, 753 (Ky. App. 2006).

this juncture, we agree with Valarie that she should have been awarded more maintenance.

This is not to say that we necessarily believe that David should be ordered to pay the entire amount requested by Valarie. However, leaving Valarie with a shortfall of over $2,000.00 a month is unconscionable and a clear abuse of discretion. *See Powell*, 107 S.W.3d at 224. "[W]here one is unable due to health problems to be self-supporting, the statute is appropriately utilized to prevent the 'drastic change' in the standard of living [after the dissolution]." *Leitsch v. Leitsch*, 839 S.W.2d 287, 290 (Ky. App. 1992). On remand, the circuit court should reassess the amount of maintenance awarded to Valarie to even out the disparity and provide Valarie with enough resources to allow her to enjoy a lifestyle more similar to the lifestyle she enjoyed during the parties' marriage.[6]

With respect to the duration of maintenance, we also must agree with Valarie. The circuit court ordered that the maintenance was to cease when Valarie "is of the age to receive Social Security." There was no evidence submitted regarding when this would occur or how much Valarie would be eligible to

---

[6] We note that the DRC referenced David's gross income instead of his net income. Net income is preferred over gross income. *See Powell*, 107 S.W.3d at 226. To the extent the record contains some evidence of David's net income, the circuit court should use that amount in determining the proper amount of Valarie's maintenance award on remand.

-17-

receive.[7]  Without such evidence, the circuit court's order to stop all maintenance when Valarie was "of the age to receive Social Security" was arbitrary.  *Russell v. Russell*, 878 S.W.2d 24, 27 (Ky. App. 1994).  Therefore, we must vacate the maintenance award with respect to duration and remand for entry of a new award in light of the evidence submitted.  When the evidence regarding entitlement to and amount of future benefits is speculative, it is better practice to enter an open-ended award that can be reduced or eliminated pursuant to KRS 403.250.  *Calloway*, 832 S.W.2d at 894.

## IV. CONCLUSION

Based on the foregoing, we VACATE the Boyd Circuit Court's judgment awarding spousal maintenance and REMAND for entry of a new maintenance award consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEF FOR APPELLEE/CROSS-APPELLANT: |
|---|---|
| Stephen McGinnis<br>Greenup, Kentucky | Sharon Rowsey<br>Ashland, Kentucky |

---

[7] Additionally, there was no evidence submitted regarding when Valarie would be able to begin drawing on the 401(k)s and pension plans without penalty and how much she would be entitled to receive each month or year.