RENDERED:  APRIL 1, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1272-MR

ANTONIO MELO                                          APPELLANT

v.                     APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 19-CI-500677

EMMA MEAD MELO; DIANA L.
SKAGGS; EMILY T. CECCONI; AND
DIANA L. SKAGGS + PARTNERS,
PLLC                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, JONES, AND MᶜNEILL, JUDGES.

MᶜNEILL, JUDGE:  Antonio Melo ("Antonio") appeals from the Jefferson Family
Court's findings of fact, conclusions of law, and judgment, following a bench trial
held on March 4, 2020, awarding Emma Mead Melo ("Emma") maintenance and
attorney fees.  Finding no error, we affirm.

Antonio and Emma were married on October 7, 2000 in New York, New York and moved to Kentucky in 2004. After almost nineteen years of marriage, they separated on March 2, 2019. At that time, both Antonio and Emma were forty-five years old. Two children were born of the marriage, one of whom is now emancipated.

Throughout their marriage, Emma took care of the home and children while Antonio was the family's primary financial provider. At the time of trial, Antonio was employed as a vice president for Humana, earning $298,893.27 in 2019. Emma was employed as a preschool teacher at Highland Presbyterian Nursery, earning $16,000.00 in 2019, although she had recently accepted a full-time position at the school beginning August 2020, earning $39,353.44 per year.

At trial, Emma testified that in November 2017, she began experiencing numbness in her legs and a "minty" feeling in her arms, feet, back of her neck, and right side of her face. Later she experienced other symptoms, such as body twitches and exhaustion. These symptoms come and go, and no definitive diagnosis has been made. Emma stated her fear is that she might have MS and that severe symptoms could develop in the future impairing her ability to work.

Dr. Roy Meckler, a neurologist who has been seeing Emma as a patient for two years, testified that her symptoms are the same as those sometimes seen in patients with multiple sclerosis ("MS"). He further testified that there is no

cure for MS and its symptoms are unpredictable. Dr. Meckler, however, testified that Emma has not been diagnosed with MS, is not currently disabled, and is able to work.

Based upon her undiagnosed condition, Emma requested maintenance that was open ended and modifiable in the amount of $6,000 per month. Emma's monthly expenses are estimated at $8,081.20 and her monthly income is $3,329. Anthony's monthly expenses are estimated at $12,400 and his monthly income is around $25,000.

Following the evidence, the trial court entered findings of fact, conclusions of law, and an order of judgment awarding Emma $614,200.80 in marital assets and $9,700 in non-marital assets. Antonio was awarded $605,675.80 in marital assets and $529,059.39 in non-marital assets. Emma was further awarded monthly spousal maintenance of $3,562 and Antonio was ordered to pay 80% of Emma's $51,112.02 attorney fee total. Antonio appealed, challenging the amount and duration of Emma's maintenance award, as well as the award of attorney fees. Further facts will be set forth as necessary below.

"The amount and duration of maintenance are within the sound discretion of the trial court." *Bailey v. Bailey*, 246 S.W.3d 895, 897 (Ky. App. 2007), *as modified* (Feb. 15, 2008) (citation omitted). "It is well-settled that we will not disturb a trial court's award of maintenance unless the court 'abused its

discretion or based its decision on findings of fact that are clearly erroneous.'" *Id.* (citing *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003)).  Abuse of discretion occurs when the circuit court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) (citation omitted).

In determining the appropriate amount and duration of maintenance, the trial court must consider all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS[1] 403.200(2).

Antonio's primary argument concerns the trial court's award of open-ended maintenance. He contends "[t]he Family Court Order on maintenance hinges on Emma's claim that she suffers from multiple sclerosis[.]" Antonio apparently believes the trial court's finding as to duration was based solely on Emma's undiagnosed condition. However, this is inaccurate. The trial court found that Emma's marital assets would not provide enough income for her to "properly support herself in the manner established during the marriage." As to Antonio, the court determined he was "well situated to provide for his own needs," based upon his monthly income of nearly $25,000.00 and estimated expenses of $12,400.00. It further found Emma "earns significantly less than Antonio and her future earning potential is also significantly less due to the years she spent as a homemaker."

The court did consider "Emma's unknown medical condition" and found that "it impacts her daily life and may impact her ability to earn future income." Based upon the above findings, the court concluded: "Emma lacks sufficient property to meet her needs [sic] reasonable needs and is unable to support herself consistent with the standard of living established during the parties' marriage."

---

[1] Kentucky Revised Statutes.

Therefore, contrary to Antonio's assertion, the trial court's award of open-ended maintenance does not "hinge[] on Emma's claim that she suffers from multiple sclerosis[.]" The trial court properly considered the factors set forth in KRS 403.200(2), including Emma's financial resources and her ability to meet her needs independently, the standard of living established during the marriage, Emma's physical condition, and Antonio's ability to meet his own needs while meeting Emma's.

While Antonio is correct that "KRS 403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely[,]" *Powell*, 107 S.W.3d at 224 (citation omitted), "in situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal, our courts have declined to follow that policy and have instead awarded maintenance for a longer period or in greater amounts." *Id.* (internal quotation marks and citation omitted).

Here, the trial court appears to have placed great weight on the discrepancy in the parties' incomes and the standard of living established during the marriage, as it was entitled to do. *See id.* ("KRS 403.200 specifically states that the trial court should consider the standard of living to which the parties are

accustomed in determining the . . . duration of the award."). "It is especially acceptable for the trial court to consider the impact of the divorce on the nonprofessional's standard of living and award an appropriate amount that the professional spouse can afford." *Id.* (citation omitted).

Further, "[w]hen the evidence regarding entitlement to and amount of future benefits is speculative, it is better practice to enter an open-ended award that can be reduced or eliminated pursuant to KRS 403.250." *Naramore v. Naramore*, 611 S.W.3d 281, 290 (Ky. App. 2020). While there was some evidence that Emma's income may increase in the future, it is uncertain when this might occur and to what degree. This uncertainly is even greater in light of Emma's undiagnosed condition.

Antonio argues the court's open-ended maintenance award creates an insurmountable barrier to modification because if circumstances stay the same, he must pay maintenance and if circumstances change, and Emma receives an MS diagnosis, he still must pay maintenance. However, Antonio's argument is again based upon the flawed premise the trial court awarded maintenance solely because of Emma's physical condition. KRS 403.250(1) provides a mechanism whereby an award of maintenance can be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." The open-ended maintenance award was based in part upon the standard of living

-7-

established during Antonio and Emma's marriage and the discrepancy between their incomes. Emma testified that she believes her current job offers opportunities for career advancement that could be "very lucrative" in the future. Should either parties' financial circumstances change, Antonio may pursue modification pursuant to KRS 403.250(1).

Antonio next challenges the amount of the maintenance award, arguing the trial court should have reduced the award by certain adjustments to Emma's income and expenses. For instance, he notes that while Emma's monthly income increased in August 2020 from $1,656 to $3,329, the court only reduced her monthly maintenance award by $564. Essentially, Antonio appears to argue that the trial court must follow a formula in determining the amount of maintenance, granting a one-for-one reduction for any adjustments to income or expenses.

However, Kentucky courts do not apply a mathematical formula in determining the amount of maintenance. *See Age v. Age*, 340 S.W.3d 88, 95 (Ky. App. 2011) ("no particular formula has ever been held as the method for establishing maintenance."). Instead, trial courts are given very broad discretion. *Id.* (citation omitted). The only requirement is that the trial court consider the statutory factors in KRS 403.200(2).

From our review of the record, it is evident the trial court considered the factors set forth in KRS 403.200(2) when it awarded open-ended maintenance of $3,562 per month to Emma. The court's order references the parties 18 year marriage, Emma's financial resources and her inability to meet her needs independently considering the standard of living established during the marriage, Emma's physical condition, and Antonio's ability to meet his needs while paying maintenance. We find no abuse of discretion by the trial court.

Finally, Antonio argues the trial court erred 1) in awarding Emma attorney fees that were already paid out of marital assets and 2) in awarding attorney fees without requiring supporting documentation. As to Antonio's first argument, he claims that by requiring him to pay for attorney fees previously paid out of marital funds, he essentially will be paying those fees twice, resulting "in double-dipping and a windfall to Emma." Antonio has cited no law in support of his argument.

Pursuant to KRS 403.220, a trial court is authorized to award a "reasonable amount" for attorney fees in a divorce action after considering "the financial resources of both parties[.]" "An award of fees is reviewed by this court under an abuse of discretion standard." *Allison v. Allison*, 246 S.W.3d 898, 909 (Ky. App. 2008) (citation omitted).

We disagree the trial court's attorney fee award amounts to "double-dipping." In effect, by requiring Antonio to pay Emma's attorney fees already paid from marital funds, the trial court reimbursed Emma for her share of marital funds expended to maintain the divorce action. As Emma notes in her appellee brief, the trial court merely "shifted the burden of those fees to Antonio in an effort to restore to Emma her portion of the marital estate that was diminished." In awarding attorney fees, the trial court found "a substantial disparity in income and assets" between the parties and ordered Antonio to pay 80% of Emma's current and past attorney fees. The court clearly intended for Antonio to shoulder most of the attorney fee expense. We find no abuse of discretion.

Antonio also contends the trial court erred in awarding attorney fees without requiring supporting documentation. Following trial, Emma's counsel submitted an affidavit containing the total number of hours expended on the case with corresponding hourly rates. Antonio argues this affidavit is insufficient to support an attorney fee award and violates the Jefferson Circuit Court local rules of practice, which require an affidavit to set forth, among other things, the nature of the services rendered. Emma rightly responds that JRP[2] 101 explicitly provides that the rules are not enforceable in family court. Further, Emma notes that her total attorney fees were $9,355.58 less than Antonio's.

---

[2] Jefferson Rules of Practice.

KRS 403.220 authorizes an award of attorney fees "after considering the financial resources of both parties[.]" Financial disparity is a factor to consider when looking "at the parties' total financial picture." *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). Here, the trial court considered both parties' financial resources, finding a "substantial disparity" in income and assets. It then awarded attorney fees based upon its consideration. This is all the statute requires. We find no abuse of discretion with respect to the award or its amount.

Therefore, for all the foregoing reasons, the judgment of the Jefferson Family Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Mark W. Dobbins
Sandra F. Keene
Louisville, Kentucky

BRIEF FOR APPELLEE EMMA MEAD MELO:

Diana L. Skaggs
Emily T. Cecconi
Louisville, Kentucky