RENDERED: DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0003-MR

MARCIA ANN DALL　　　　　　　　　　　　　　　　　APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.　　　　　HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 20-CI-500458


ROGER WAYNE DALL; LOUIS P.
WINNER; AND MICHELLE L.
EISENMENGER　　　　　　　　　　　　　　　　　　APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: Marcia Dall appeals from the findings of fact, conclusions of

law, and decree of dissolution entered by the Jefferson Family Court. After careful

review, we affirm in part, reverse in part, and remand for proceedings consistent

with this Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Marcia and Roger Dall married in 1984. Marcia's career has always been in finance and/or accounting, and she began her career with General Electric ("GE") in Cincinnati, Ohio. Roger worked for a distillery in the Cincinnati area as a chemist, before later being promoted to an environmental health and safety supervisor. The parties' first child was born in 1990. Roger eventually left the distillery and accepted a similar position at Avon Products.

In 1993, Marcia received a promotion from GE and the family moved to Connecticut. Roger left his position at Avon but was able to secure employment in Connecticut. The parties' second child was born in 1994.

In 1995, Marcia was again promoted by GE and the family moved to the Chicago, Illinois area. Roger again left his employer but was able to find employment near Chicago. In 2000, Marcia was promoted to Vice President of GE Financial Assurance.

In 2002, Marcia accepted a position with Cigna Insurance, which would have required the family to move back to Connecticut. Roger's then-employer, Diageo, approved his transfer to Connecticut as well. However, GE did not want to lose Marcia and offered her another promotion. Marcia accepted GE's offer, and the family moved to Raleigh, North Carolina. Diageo did not have a presence in North Carolina, so Roger was again forced to resign from his

employment. The parties agreed that Roger would not work once they moved to North Carolina, but offered differing testimony as to whether the arrangement was intended to be permanent or temporary. Regardless, Roger became a homemaker, while Marcia continued to focus on her career.

In 2008, Marcia left GE and accepted employment with Cigna Insurance, which required the family to move back to Connecticut. Just one year later, Marcia accepted the position of Chief Financial Officer ("CFO") at Erie Insurance and moved to Erie, Pennsylvania. Roger stayed behind in Connecticut temporarily so that the parties' youngest son could complete his freshman year of high school before moving to Pennsylvania.

In 2015, Marcia accepted the position of CFO at Churchill Downs, Inc. ("CDI") in Louisville, Kentucky, and the family moved to Kentucky. The parties separated on or about February 11, 2020, and Marcia filed for divorce on February 14, 2020. After several failed attempts at mediation, the family court conducted a two-day trial regarding division of marital property and Roger's claim for spousal maintenance. At the time of the final hearing, Marcia was fifty-nine years old, and Roger was sixty-five years old. He had not worked since 2002.

The parties acquired substantial assets and property over the course of the marriage. At the time of separation, the parties' marital estate was valued at approximately $11,000,000; at the time of the final hearing, it was valued at

approximately $19,000,000. Marcia argued that all marital property and assets should be divided 60% to her and 40% to Roger because the estate was built entirely on her employment and earnings. Marcia also argued Roger was not entitled to any of the increase in value of the marital estate after the date of separation because he moved out of the home and was no longer contributing to the marital estate in any capacity. She also asserted that Roger was not entitled to spousal maintenance because, no matter how the family court divided the marital estate, Roger would have sufficient property and assets to meet his reasonable needs.

The family court disagreed. It divided the marital estate 50/50, including all of Marcia's earnings obtained post-separation. Roger was also awarded $15,000 per month in spousal maintenance until Marcia turns sixty-five years old or retires, whichever is later. Both parties filed motions to alter, amend, or vacate the family court's order. Although the family court entered a subsequent order making additional findings and clarifications, it did not substantively change its prior order. This appeal followed. Further facts will be developed as necessary.

## II. STANDARD OF REVIEW

The assignment of marital property and debts incurred during the marriage are reviewed under an abuse of discretion standard. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 522 (Ky. 2001), *overruled on other grounds by Smith*

-4-

*v. McGill*, 556 S.W.3d 552 (Ky. 2018).  Similarly, "[a]n award of [attorney's] fees is reviewed by this court under an abuse of discretion standard."  *Allison v. Allison*, 246 S.W.3d 898, 909 (Ky. App. 2008) (citation omitted).  Finally, "[w]hile the award of maintenance comes within the sound discretion of the trial court, a reviewing court will not uphold the award if it finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous." *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citation omitted).

### III. ANALYSIS

Marcia makes numerous arguments on appeal.  She asserts the family court erred because it:  (1) wrongly presumed that KRS[1] 403.190 requires equal division of marital property, including Marcia's earnings acquired post-separation; (2) did not do a proper analysis to determine which of Marcia's performance stock units ("PSUs"), awarded to Marcia as additional compensation from CDI, were marital versus nonmarital; (3) failed to account for an advance of funds awarded to Roger in the amount of $133,135.05 in calculating his share of the marital estate; (4) ordered Marcia to pay duplicative attorney's fees; and (5) awarded maintenance to Roger.  We address each argument in turn.

---

[1] Kentucky Revised Statute.

## A. Division of Marital Property

Marcia argues the family court erred by engaging in an analysis of KRS 403.190 that was based, in large part, on trying to decipher the legislative intent behind the statute. She also believes the family court erred in dividing the marital estate 50/50.

KRS 403.190 provides, in relevant part, that:

(1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

   (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

   (b) Value of the property set apart to each spouse;

   (c) Duration of the marriage; and

   (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

    (a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

    (b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

    (c) Property acquired by a spouse after a decree of legal separation;

    (d) Property excluded by valid agreement of the parties; and

    (e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

Pursuant to the statute, all property acquired after the date of marriage is considered marital property unless one of the exceptions listed in KRS 403.190(2) applies. Notably, KRS 403.190(2)(c) exempts only property acquired by one spouse after the date of a *legal separation*. *See Stallings v. Stallings*, 606 S.W.2d 163, 164 (Ky. 1980); *see also* KRS 403.140(2). The parties were never legally separated.

Careful review of the family court's order shows that it did enumerate and consider the factors in KRS 403.190(1)(a)-(d). This was a thirty-eight year marriage in which Roger gave up his own successful career so that Marcia could pursue hers, including moving the family around the country numerous times from 1993 to 2015. Roger cared for the parties' children and maintained the family home. He also accompanied Marcia to work-related functions. As a result of this team effort over the course of the marriage, Marcia now earns millions of dollars per year in compensation from CDI.

Although the family court's order does analyze what it believes was the legislative intent behind the statute, it is clear that, when reading the analysis in context with the rest of the order, the family court believed dividing the marital property and assets equally was appropriate *in this instance*, not that the statute demands it in every instance, as Marcia implies. The analysis of the legislative intent was superfluous, but did not rise to the level of abuse of discretion by the

family court. Further, when dividing Marcia's post-separation earnings equally between the parties, the family court found, "[w]hile [Roger] may not technically have assisted [Marcia] in working at [CDI] during this time period, his prior efforts in the marriage, and his sacrifice in abandoning his own career at her request, contributed to [Marcia's] ability to acquire these assets post separation." With the exception of the PNC Investment account discussed later in this Opinion, the family court divided the assets, including Marcia's post-separation earnings, in "just proportions" as mandated by *Stallings*, *supra.* Accordingly, there was no abuse of discretion by the family court.

## B. PSUs

We begin by noting that the parties agree the case must be remanded regarding the family court's analysis and division of Marcia's PSUs pursuant to *Normandin v. Normandin*, 634 S.W.3d 589 (Ky. 2020). We also agree.

Marcia testified that she receives both PSUs and Restrictive Stock Units ("RSUs") as forms of additional compensation from CDI. She explained that RSUs are given as compensation in which she receives one-third of the benefit per year for three years. In *Normandin*, the Kentucky Supreme Court explained:

> RSUs are "a form of equity-based compensation under which the issuer company promises to deliver whole shares of stock of the company in the future to an employee at no cost to the employee, if pre-specified vesting and distribution conditions are satisfied." Vesting conditions generally tie the employee's

compensation either to a performance metric or time of service metric. Unvested restricted stock units generally are not transferable. States are divided on how to classify such assets in a divorce.

*Id.* at 595-96 (footnotes omitted).

Marcia testified that PSUs are very similar to RSUs, the only difference being that the entire benefit vests at the end of the three-year period, and the amount of compensation cannot be determined until that time.

The parties agree that *Normandin* is applicable. *Normandin* laid out a bright line rule for courts to follow when dividing RSUs and PSUs. Noting that RSUs are earned over the period between when they are granted and when they vest, the Kentucky Supreme Court requires a court to determine "the proportion of time between grant and decree of [dissolution] that is marital." *Id.* at 598. In other words, "the marital portion of each RSU [and PSU] allotment is the proportion of time in each three-year vesting period that was marital." *Id.* at 599.

We agree with the parties that the family court failed to make relevant findings regarding the PSUs. All were deemed to be marital property even though some will not vest until after the date of decree. This is an abuse of discretion by the family court. On remand, the family court shall make findings of fact for each allotment of PSUs with regard to when they were granted, when they vest, and what portion of that time period is marital pursuant to the mandates of *Normandin.*

## C. Advancement of Funds to Roger

After the final hearing, but prior to entry of the final order of the family court, Roger filed a motion for advancement of funds from the parties' PNC joint investment account in the amount of $133,035.05. On February 28, 2023, the family court entered an order granting Roger's motion, but with the caveat that, "Said amount shall be an advance against his share of the parties' marital estate." Nevertheless, the family court failed to account for the advancement in its final order. Marcia raised the issue in her motion to alter, amend, or vacate. In its subsequent order, the family court ruled that

> [Marcia] asserts that the Court erred in not offsetting the advance of $133,035.0[5] which was granted to [Roger] early in these proceedings. What [Marcia] fails to acknowledge is that the Court is charged with making an **equitable**, not equal, division of assets of the parties. The Court was presented with significant financial information which remained somewhat fluid throughout the course of the litigation. The Court utilized the information regarding the assets, debts, etc., of the parties and fashioned an equitable resolution to the issues which were outstanding for the parties at the time of the trial. The Court is comfortable and confident that the disposition represents an equitable division of all assets of the parties. Thus, the Court will not order any division or off-set of the $133,035.0[5] advanced in this matter.

(Emphasis in original.)

We recognize the family court has "wide discretion in dividing marital property; and we may not disturb the trial court's rulings on property-division

-11-

issues unless the trial court has abused its discretion." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006). We also recognize that, because the marital estate is so substantial, $133,000 could arguably be an insignificant amount. However, under any other circumstances, if a court advanced such a large amount of assets to one party with an attached caveat that the advancement is essentially an IOU, only to then ignore the advancement without necessary findings in its final calculations, that decision would be arbitrary. The family court went to great lengths in its order to explain why it was dividing the marital property and assets *equally*. The family court explained

> . . . in situations such as the one at bar where the parties enter into their union and operate as a functioning, comingled unit over time, the Court believes the intention [of the legislature] is to separate the parties and their accumulated assets/debts **equally** and restore them to the status of single individuals. In this way, both parties leave the marriage in the same position, with neither gaining an advantage, or disadvantage as a result of the decision to go their separate ways.

(Emphasis added.)

Notably, Roger does not address this issue at all in his brief. Marcia is entitled to findings of fact regarding why the family court chose to ignore its prior order regarding division of the PNC investment account. A broad assertion of "equity" after the fact, without such findings, is an abuse of discretion, particularly

in light of the family court's insistence upon equal division. Accordingly, we reverse and remand this issue for further findings.

### D. Attorney's Fees

Marcia next argues the family court erred by awarding attorney's fees to Roger, particularly because the fees awarded were duplicative. We agree with Marcia in part.

> An award of attorney's fees is governed by KRS 403.220, which "authorizes a trial court to order one party to a divorce action to pay a 'reasonable amount' for the attorney's fees of the other party, but only if there exists a disparity in the relative financial resources of the parties in favor of the payor." The decision of whether to make an award of attorney's fees and, if so, the amount of any such award is within the discretion of the trial court and is never mandatory.

*Smith*, 235 S.W.3d at 18 (Ky. App. 2006).

We do not agree that the trial court abused its discretion by awarding attorney's fees to Roger. The findings of fact and the record before us support its decision. However, we agree with Marcia that the amount of the award constitutes an abuse of discretion because a portion of the amount awarded is duplicative.

Roger had two attorneys from different firms during the proceedings. Pursuant to an order entered on February 22, 2021, Marcia was to advance $50,000 in attorney's fees for Roger. The order did not specify if the funds should come from an account that belonged solely to Marcia or if it should come from a joint

-13-

account.  Marcia's compliance with that order is shown in the records submitted by Roger's counsel, Michelle L. Eisenmenger, which shows a payment of $50,000 to Roger's account on March 8, 2021.  On December 19, 2022, Marcia was again ordered to advance $50,000 in attorney's fees to Eisenmenger.  Because the latest date of Eisenmenger's invoices in the record is December 2, 2022, compliance with the December 19, 2022 order is not shown, but is undisputed.  On January 20, 2023, Eisenmenger and her co-counsel, Louis P. Winner, filed a joint affidavit for attorney's fees.  Eisenmenger stated that, as of December 1, 2022, her fees were $83,964.73.  Winner stated that, as of the same date, his fees were $26,663.26.  Importantly, the affidavit failed to state how much of those fees had already been paid.  *At least* $50,000 in attorney's fees is duplicative based on Eisenmenger's records.[2]  Nevertheless, the family court ordered Marcia to pay $110,627.99 directly to Roger's attorneys based on the joint affidavit and without regard to whether any sums had already been paid solely by Marcia or from a joint account.

Roger's brief states that Marcia's objection to the award of attorney's fees "fails to realize that any payment to Roger's counsel that duplicates attorney fees that Roger has already paid will be restored to Roger – attorneys will not be paid twice."  Although counsel may not experience a windfall, it is possible that

[2] We say "*at least*" because only the order entered on December 19, 2022, specified that the funds for the attorney's fees were to come from an account solely in Marcia's name.

-14-

Roger will. In other words, Roger stands to receive more assets than awarded to him by the family court. The point of attorney's fees is to compensate Roger's attorneys, not to provide a conduit for Roger to receive additional marital funds that were not specifically distributed to him in the family court's order. Accordingly, we reverse the family court as to the amount of attorney's fees awarded to Roger. The amount awarded is not supported by evidence of record, including the affidavit and invoices submitted by Eisenmenger and Winner. On remand, the family court shall make findings that account for any duplicative fees when calculating the amount Marcia is ordered to pay.

### E. Maintenance

Finally, Marcia argues the family court abused its discretion in awarding Roger spousal maintenance in the amount of $15,000 per month until Marcia reaches the age of sixty-five or retires, whichever happens later.

KRS 403.200 provides that

> (1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
>> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

-15-

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Under the statute, a court must first make relevant findings of fact and then determine maintenance considering those facts. *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992). Here, the family court considered the duration of the marriage, the standard of living of the parties throughout the marriage, the assets and property awarded to Roger, and the fact that he is now sixty-five years old. Although the family court found that Roger does not possess the inability to work, it is unlikely he will find employment in his prior field, that has evolved since he left in 2002. "KRS 403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." *Powell*, 107 S.W.3d at 224 (citation omitted).

Notably, Roger requested $44,000 per month in spousal maintenance. Although the family court found that Roger was entitled to some maintenance to meet his reasonable needs, it rejected the amount requested by Roger as excessive. The amount and duration of maintenance is within the sound discretion of the trial court. *Russell v. Russell*, 878 S.W.2d 24, 26 (Ky. App. 1994). We cannot say the trial court abused its discretion in the amount or duration of maintenance awarded to Roger.

## IV. Conclusion

For the foregoing reasons, the Jefferson Family Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jonathan T. Salomon
E. Lee Veazey
John S. Lueken
Louisville, Kentucky

BRIEF FOR APPELLEE:

Paul Hershberg
Michelle Eisenmenger
Louis P. Winner
Louisville, Kentucky