Gregory W. BRENZEL, Appellant

v.

Jill T. BRENZEL and Melanie Straw–Boone, Appellees.

and

Jill T. Brenzel;  Melanie Straw–Boone; and Pregliasco Straw–Boone, Cross–Appellants

v.

Gregory W. Brenzel, Cross–Appellee.

Nos. 2005–CA–002318–MR, 2005–CA–002520–MR, 2005–CA–002398–MR.

Court of Appeals of Kentucky.

Jan. 4, 2008.

Melanie Straw–Boone, Pregliasco Straw–Boone, Louisville, KY, For appellee/cross-appellant Jill T. Brenzel.

Before NICKELL, STUMBO and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

This case arises from an action for dissolution of marriage. Gregory W. Brenzel appeals alleging that the Jefferson Family Court erred when it valued his interest in businesses partially owned by him and that the family court erred when it denied his CR 60.02 motion. Jill T. Brenzel cross-appeals alleging that the family court erred when it determined Gregory's income and that the amount of her maintenance award was an abuse of discretion. We conclude that there was no reversible error committed by the family court and, therefore, affirm.[1]

Gregory and Jill were married on October 22, 1988, and are the parents of two minor children, ages seven and fourteen. Throughout the marriage, Gregory was involved in several business ventures.

Although there was no formal partnership agreement, in 1982, Gregory and his father, James, formed the Brenzel Partnership and were equal partners until his brother, Glenn, graduated from college at which time Gregory and Glenn each owned 22.50 percent. In 1993, Gregory, James, and Glenn established Doups Point, a Sub–S Corporation. James owned 50 percent of Doups Point, Glenn 13 percent, and Gregory the remaining 37 percent. The

Edward C. Airhart, Louisville, KY, for appellant/cross-appellee Gregory W. Brenzel.

**1.** Although Jill's attorneys are parties to this appeal, there is no issue raised concerning an award of attorney fees.

crux of Gregory's appeal is that the family court erred when it determined that he would not have to repay draws and advances made against the capital account of the partnership and, thus, were not properly characterized as debts owed by Gregory nor debts that decreased the value of his partnership interest. To fully understand the basis for Gregory's contention, we recite the pertinent facts.

In 1990, the partnership purchased a Marathon service station located at 1137 East Burnett Avenue in Louisville which is referred to by the parties as the Germantown property. Subsequently, Doups Point purchased property on Bardstown Road which was leased by the Brenzel Partnership in 1993 and on which Gregory operates a Chevron service station.

Gregory testified that he receives a salary draw from Doups Point of $650 per week and $150 cash from the service station for a total of $3,466.67 per month. In addition to his salary, there was evidence that Gregory had taken draws from the partnership and had decreased its capital account in the amount of $324,508. He also averaged a sale of one vehicle per month from the station from which he received $200 per month. In addition to his income from the service station, Gregory is a licensed real estate broker and, between February 2004 and April 2005, after deducting expenses, earned approximately $1,180.50 per month. Based on all of Gregory's income, the family court found Gregory's gross monthly income was $4,847.17.

There was testimony that business at the stations had steadily declined over the past five years. Gregory's father confirmed that the service station business had been declining over the past five years and, as a result, he contributed between $400,000 and $500,000 to the service stations. Additionally, he testified that he made short-term loans to the stations in excess of $200,000. Although he did not have any promissory notes with either of his sons, he testified that he expected repayment.

During the five years prior to the dissolution action, the partnership unsuccessfully attempted to sell or lease the Germantown property which was appraised in September 2003 for $325,000 but had no firm offers; as of the time of the hearing, however, there was a contract to purchase James' interest in the property for $125,000. Doups Point also listed for sale or lease the Bardstown Road property which was appraised for $1,200,000. In 2004, James sold his 50 percent interest in the property for $600,000.

Both parties produced experts to value Gregory's interest in the Brenzel Partnership and Doups Point.

Jill retained a CPA, John T. LeMastus, who utilized the asset approach to value Gregory's interest in the partnership and Doups Point. He concluded that the value of Gregory's interest in the partnership, including deductions for his share of the secured debt, was $13,500. The value of his interest in Doups Point was determined to be $183,150. He testified the books and tax returns of both businesses did not utilize normal accounting practices. For instance, he noted that after the dissolution action was filed, Gregory attempted to transfer 12 percent of his stock to Glenn for nominal value. Although there was testimony that Gregory and Glenn had been permitted to take draws and advances from the partnership in excess of its profits, there were no promissory notes signed by either brother nor evidence that the partnership owed a debt to a third party as a result of the draws and advances and, therefore, no deduction was taken from the value of Gregory's interest as a debt he owed to the businesses.

Roby E. Crouch, an accountant and bookkeeper for Century Small Business, testified on behalf of Gregory. He also used the asset approach to value Gregory's interest in the partnership. However, he concluded that the corporation had a negative value of $656,846 which included draws taken by Gregory totaling $57,831 and a negative capital account of $266,677. Mr. Crouch testified that if the partnership was dissolved or sold, the partners could require Gregory to repay the money which totaled $324,508.

James O. King, a CPA, testified in regard to Gregory's interest in the Germantown property and the Bardstown Road property. Based on the 2003 appraisal, Mr. King valued the Germantown property at $325,000. Although the Bardstown property was appraised for $1,200,000 in 2003 and James' 50 percent interest sold for $600,000 in 2004, he valued it at $960,000. After reducing the value by the debt outstanding on each property, he concluded that Gregory's equity in both properties was $77,025.

After hearing the evidence, the court concluded that Gregory's interest in Doups Point was $162,800 and the partnership was $13,500. It found no credible evidence that upon dissolution of the partnership or its sale, Gregory would be required to pay back the approximately $324,508 he received in draws and advances against the capital account as suggested by Gregory's expert. The court then awarded $80,000 to Jill as her marital interest in the businesses and Gregory $96,300. Gregory challenges the failure of the family court to characterize the $324,508 as a debt he owed to the partnership.

■ There is no single method mandated to be utilized by the court when valuing a partnership or business interest. In such instances, the role of the appellate court "is to determine whether the trial court's approach reasonably approximated the net value of the partnership interest." *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky.App. 1990). A trial court's determination will not be disturbed on appeal unless it is determined to be clearly erroneous. *Lane v. Lane*, 202 S.W.3d 577 (Ky.2006).

■ Gregory's complaint with the family court's findings is that it did not reduce the value of the partnership by $324,508, the amount he alleges he is indebted to the partnership as a result of his draws and advances. There was testimony from Mr. Crouch, James, Gregory, and Glenn that Gregory had been permitted to take money from the partnership in excess of its profits and that the practice had continued for years. However, there were no promissory notes signed by Gregory nor any specific evidence in the record that Gregory was obligated to repay the money. Moreover, there was no evidence that Gregory had made any past payments toward the amount. Therefore, there is little evidence to support the conclusion that the partnership "loaned" money to Gregory and, therefore, we must conclude that there was no abuse of discretion in the family court's refusal to deduct that amount from the value of Gregory's interest in the family businesses.

Following the entry of the court's judgment, Gregory and Jill filed respective CR 59.05 motions raising numerous legal and factual errors. Ultimately, the family court granted each party partial relief. Thereafter, Gregory filed a CR 60.02 motion alleging that since the court's ruling on the parties' CR 59.05 motions, he discovered that Jill had made a substantial down payment on a residence and possibly failed to disclose marital assets or had additional income. For the first time, he further alleged that he had a non-marital interest in the Bardstown Road property. He cited health issues as the reason for his

failure to raise the issue earlier. Prior to the ruling on the motion, Gregory filed this appeal.

■ Gregory contends that the family court denied his CR 60.02 motion based on its erroneous interpretation of the law that since he had filed a notice of appeal prior to the court's ruling on the motion, the court lost jurisdiction. He has failed to cite to the record where the family court expressed the basis for its denial of his motion. A handwritten note on Gregory's proposed order merely states "motion overruled" which was signed by the judge and entered as an order by the clerk. We conclude that the grounds alleged in Gregory's motion and affidavit were insufficient to warrant the relief requested and, therefore, it was properly denied.

■ The standard of review for relief under CR 60.02 is the abuse of discretion standard. *Dull v. George,* 982 S.W.2d 227, 229 (Ky.App.1998). Gregory sought to invoke sections (a), (b), (d) and (f) of CR 60.02 as the basis for his relief. His affidavit, however, failed to recite any facts that warranted relief under the rule.

Subsection (a), which justifies relief on the basis of "mistake, inadvertence, surprise or excusable neglect," has no application to the facts as alleged by Gregory. He merely stated in his affidavit that he failed to submit evidence relating to a non-marital claim in the Bardstown Road property and that Jill had hidden certain marital assets. Likewise, there is no newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial. CR 60.02(b). Gregory had access to bank and real estate records prior to the hearing and should have been aware of whether or not he had a non-marital interest. Although Gregory's affidavit suggested that Jill fraudulently hid marital assets, in *Rasnick v. Rasnick,* 982 S.W.2d 218, 221 (Ky.App.

1998), this court adopted the view that nondisclosure of assets in a dissolution action does not constitute fraud affecting the proceedings as used in CR 60.02(d). Finally, we conclude that Gregory's CR 60.02 motion failed to state any facts which justify the extraordinary relief required under subsection (f).

■ Having disposed of Gregory's appeal, we turn to Jill's cross-appeal in which she challenges the family court's award of child support and maintenance. The focus of her argument is the calculation of Gregory's income. Jill argues that Gregory's income should have been based on the years immediately preceding the dissolution hearing during which Gregory's income was higher than $4,847.17. Relying on *Keplinger v. Keplinger,* 839 S.W.2d 566, 569 (Ky.App.1992), she contends that the court was required to presume that Gregory's most recent earnings would be the same as his future earnings for the purpose of calculating child support and maintenance. Using Jill's calculation, Gregory's monthly income from all sources would be $5,965.30 instead of $4,847.17 as found by the family court.

There was persuasive evidence that the profits from the service stations had steadily declined over the past five years. Since both the Germantown property and the Bardstown Road property were listed for sale, the court could reasonably find that the source of Gregory's continued income from the businesses is speculative. The present financial status of the partnership and Doups Point supports the family court's finding that Gregory's income at the time of the dissolution was an accurate projection of his future earnings. Should his income actually be higher in the future, Jill will be able to file an appropriate motion for modification.

■ Jill also challenges the amount of maintenance awarded on the basis that her reasonable living expenses exceed her income and the maintenance awarded.

■ An award of maintenance and the amount are within the discretion of the trial court. *Browning v. Browning,* 551 S.W.2d 823, 825 (Ky.App.1977). Jill is a forty-year-old high school graduate who, because she has multiple sclerosis, receives Social Security Disability benefits of $804 per month. The family court found that amount insufficient to meet her reasonable needs and awarded maintenance. KRS 403.200. Jill contends that the courts permanent maintenance award of only $250 per month is woefully inadequate to meet her reasonable needs which total $2,201 per month. We disagree.

KRS 403.200(2) specifies the factors which the court is to consider when determining the amount to be awarded. Of particular significance is that Jill received $107,130.20 in marital property which included $80,000 which Gregory was ordered to pay in a lump sum within six months of the judgment. Moreover, Jill was assigned a comparatively small amount of the marital debt. When it determined the amount of maintenance to award, the family court properly considered the factors set forth in KRS 403.200(2). We will not disturb its decision.

For the foregoing reasons, we affirm the findings of fact, conclusions of law, and judgment of the Jefferson Family Court.

ALL CONCUR.