RENDERED: MAY 20, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0038-MR

SARIN M. SHAH                                                APPELLANT

v.

APPEAL FROM FAYETTE FAMILY COURT
HONORABLE LIBBY G. MESSER, JUDGE
ACTION NO. 17-CI-03889

BHAJANA SARIN SHAH                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND GOODWINE, JUDGES.

CLAYTON, CHIEF JUDGE: Sarin M. Shah appeals from the Fayette Family

Court's findings of fact, conclusions of law, and its amended findings of fact and

conclusions of law in this dissolution of marriage case. Sarin argues that the

family court erred in its valuation of the marital residence; in not allocating the

entire home equity line of credit (HELOC) debt to his former spouse, Bhajana

Shah; in its disposition of Bhajana's jewelry; in awarding Bhajana spousal

maintenance; in imputing income to Sarin and not deviating from the child support guidelines; in finding that Sarin dissipated the marital assets; and in not awarding Sarin attorney fees. Upon review, we affirm.

**Factual and Procedural Background**

Sarin and Bhajana were married in India in 1998. Bhajana filed a petition for dissolution of marriage in the Fayette Family Court on October 30, 2017, and pursued separate divorce and criminal proceedings against Sarin in India. The final dissolution hearing was held over several days in 2019 and 2020. The family court entered findings of fact, conclusions of law, and decree of dissolution on September 18, 2020. Following the filing of post-judgment motions by both parties and a hearing, the family court entered amended findings of fact, conclusions of law, and order on December 11, 2020. Sarin brought an appeal from these orders, which was held in abeyance pending the resolution of matters relating to the marital residence. Following the entry of an order by the family court disposing of these issues, the appeal was returned to the active docket by order of this Court on July 15, 2021.

Sarin and Bhajana have two children, the eldest of whom became emancipated during the course of the dissolution proceedings. The other child was twelve years of age at the time of the entry of the final decree in 2020. According to Bhajana, she was not employed full time after the birth of the children because

-2-

Sarin would not allow it. After the separation, she obtained full-time employment at the University of Kentucky earning $20 per hour. She is able to provide health insurance for herself and the children through her employer at a cost of $140.60 per month. Bhajana claims that during the course of their marriage, Sarin refused to provide her with any information about their finances. Although some of their bank accounts were held jointly, she testified she was not permitted to access them without argument.

During the marriage, Sarin was employed for at least fifteen years as an IT specialist for the Kentucky state government, earning a gross annual income of approximately $100,000. He left this employment to start his own businesses in May 2017, several months before Bhajana filed the petition for dissolution. Sarin testified that Bhajana urged him to leave his job to start his own businesses whereas Bhajana testified that she was not consulted about the matter. Sarin claims he now has an annual income of only $50,000. The family court initially found that the checking account of one of Sarin's businesses showed deposits of over $150,500 between May 2017 and April 2018. On the basis of this evidence, the family court deemed Sarin's testimony that he only earns $50,000 to be disingenuous. The family court also suggested that Sarin's voluntary frequent travel may have contributed to his reduced income. Throughout the pendency of the dissolution proceedings, Sarin visited India frequently for periods of two to six

weeks to see his parents, who were ill. His father subsequently passed away. Sarin testified that he is not permitted to work remotely while he is in India, even though he is an independent owner and contractor. The court concluded that if he is earning only $50,000 annually, he is voluntarily underemployed. It imputed his former income of $100,000 to him for purposes of calculating child support. The court found no reason to deviate from the child support guidelines and ordered him to pay child support in the amount of $726.92 per month. It also ordered him to pay maintenance in the amount of $1,000 per month for 72 months.

Upon Sarin's motion to alter, amend, or vacate, the family court altered its findings to show that the amount of the deposits into Sarin's business account between May 2017 and April 2018 was either $64,276 or $70,508. The court reduced the amount of maintenance from $1,000 to $420 monthly to reflect the lower amount of deposits. As to child support, the court did not change the amount of income imputed to Sarin but did recalculate the support amount, in accordance with the guidelines, to account for the modified maintenance awarded to Bhajana.

The family court also determined that Sarin had dissipated the marital assets after the filing of the dissolution petition. It based this conclusion on the following findings: that Sarin had spent more than 26 weeks in India during the separation period without Bhajana or the children and had spent about $3,500 on

airfare; that Sarin purchased several expensive items for himself, including a new $3,000 Tempurpedic mattress and a $700 dog; and that without consulting Bhajana, he helped their elder child, who is a college student, purchase a Tesla automobile, paying him $500 per month and the insurance on the vehicle. He also gave that child a tax refund of $3,750 he and Bhajana received, without consulting Bhajana. The court further found that after Bhajana filed the petition for dissolution, Sarin began to withdraw large sums from various investment and savings accounts without Bhajana's knowledge or consent. Prior to his withdrawals, these accounts contained a total of approximately $150,000. The court found that Sarin had withdrawn a total of over $135,000 since the dissolution action was filed.

Bhajana and Sarin own a home which had a PVA value of $245,000. It was encumbered with a mortgage of approximately $125,000. In May 2017, they obtained a HELOC with an initial disbursement of $25,507.52. Of that amount, $10,000 was later used for the parties' attorneys' fees. The family court found that Sarin had continued to access funds from the HELOC, and the balance owed had risen to $79,711.86 by June 2020. Sarin testified that he accessed the HELOC funds to pay marital expenses during the pendency of the dissolution action. Bhajana was not consulted or made aware that Sarin was accessing the additional HELOC funds.

Bhajana possesses jewelry which was given to her by Sarin, Sarin's parents, and by her own parents. The family court rejected Sarin's contention that the jewelry from him and from Bhajana's parents was intended as an investment for the entire family. Instead, it characterized the jewelry gifted to Bhajana by her parents as non-marital property. It further concluded that although the jewelry from Sarin may "technically" be marital property, its value had not been established and it would not be utilized in determining the division of the marital assets. Bhajana agreed that she would return the jewelry given to her by Sarin's parents.

As noted above, the family court awarded Bhajana maintenance of $1,000 per month for a period of 72 months which was subsequently reduced to $420 per month for the same period. The award was based on the family court's finding that Bhajana's income from her employment and the child support was insufficient to meet her reasonable needs, that it was a lengthy marriage during which Bhajana had been a traditional homemaker and mother, that Sarin had exhausted a large amount of the marital assets during the dissolution proceedings, that Sarin's monthly expenses had been greatly reduced as his father had passed away and he no longer needed to travel to India regularly to care for him, and he was able to work from home and provide child care for the minor child.

The family court awarded Bhajana the marital residence and all the equity therein. Bhajana was also made responsible for the entire first mortgage debt. She was also ordered to pay one half of the HELOC, which had an approximate outstanding balance at the time of the filing of the petition of $44,734. Sarin was ordered to pay the other share of the HELOC.

**Standard of Review**

When disposing of property in a dissolution of marriage action, the trial court is required by Kentucky Revised Statutes (KRS) 403.190 to follow a three-step process: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001) (citations and footnotes omitted).

KRS 403.190(3) creates a presumption that all property acquired after the marriage, with the exceptions enumerated in KRS 403.190(2), is marital property. *Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (citations and quotation marks omitted). "A party claiming that property acquired during the marriage is other than marital property, bears the burden of proof." *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky. 2002).

-7-

When dividing the marital property, the family court is required by KRS 403.190(1) to do so "without regard to marital misconduct in just proportions" after "considering all relevant factors" which include:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(1).

On appeal, we review the trial court's findings of fact only to determine if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005) (citing *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)).

The family court's division of the marital property will not be disturbed except for an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). "An abuse of discretion occurs when a trial court enters a decision that

is arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010) (citations omitted).

When we review the decision of the family court, "[t]he test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008) (citation omitted).

**Analysis**

**1. The valuation of the marital residence**

Sarin argues that the family court erred in relying on the PVA assessment to assign a value of $245,000 to the marital residence. Sarin argues that he and Bhajana were not qualified to express an opinion regarding the value of the home and the court should have ordered it to be sold or appraised by an expert. At the final hearing, Sarin testified that the PVA value of the house in December 2019 was less than what the parties paid for it in 2004. Following the entry of the family court's findings of fact and conclusions of law, Sarin submitted other evidence of the home's value, including an appraisal of $307,000 and appraisals from Bhajana's lender which placed the value at between $290,000 and $330,000.

Sarin relies on *Robinson v. Robinson*, a dissolution case in which the Court held that a PVA assessment coupled with the testimony of the parties was an

insufficient evidentiary basis for the family court to assign a value to their real property, consisting of two businesses and a home. 569 S.W.2d 178 (Ky. App. 1978), *overruled on other grounds by Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. App. 1981). The opinion states that "[t]he mere fact of ownership does not of itself qualify the parties to give a value" and that the PVA assessment was also of little value because the "PVA did not testify, did not give any basis for such valuation, was not subject to examination by the parties or the court, and was not subject to cross-examination." *Id.* at 180. It concluded that "[i]f the parties come to the end of their proof with grossly insufficient evidence on the value of the property involved, the trial court should either order this proof to be obtained, appoint his own experts to furnish this value, at the cost of the parties, or direct that the property be sold." *Id.*

Sarin chose not to obtain an expert appraisal of the property until after the family court ruled in a manner he did not approve. The *Robinson* opinion plainly states that unless attorneys practicing domestic relations law "give the court adequate tools with which to work, they can hardly complain of inequitable results." *Id.* Furthermore, we are not convinced that the family court erred in relying on the PVA assessment. The Kentucky Supreme Court recently held that PVA assessments "constitute relevant and probative evidence" in condemnation

proceedings. *Borders Self-Storage & Rentals, LLC v. Transportation Cabinet, Department of Highways*, 636 S.W.3d 452, 456 (Ky. 2021). It stated that

> [m]odernization and enhanced professionalism in PVA offices across the Commonwealth since the 1930's calls for an increased confidence in the land values assessed by those offices. KRS 132.190(3) requires all property in the Commonwealth to be assessed at its fair cash value. Further, in 2012, the General Assembly enacted KRS 132.191 which "recognizes that Section 172 of the Constitution of Kentucky requires all property, not exempted from taxation by the Constitution, to be assessed at one hundred percent (100%) of the fair cash value" and affirms the duty of the PVA "to value property in accordance with the Constitution."

*Id.*

The family court was acting well within its role as the finder of fact in choosing to give greater weight to the PVA assessment rather than to Sarin's admittedly inexpert testimony regarding the value of the home. Its decision was based on substantial evidence and was consequently not clearly erroneous.

**2. The allocation of the HELOC debt**

In a related argument, Sarin contends that the family court abused its discretion by not allocating the entire HELOC debt to Bhajana. This argument is based on his contention that the marital residence was undervalued. He argues that if the marital residence is actually worth from between $307,000 to $330,000, Bhajana unfairly received an additional $62,000 of equity in the home and should have to assume the entire HELOC debt to offset that gain. Bhajana argues that

-11-

even if the marital residence is worth $330,000, the highest amount claimed by Sarin, the family court's decision was equitable because Sarin's unilateral liquidation and dissipation of $135,000 in the investment accounts and his incurrence of substantial additional HELOC debt equals approximately fifty percent of that amount. We have already determined that the family court's reliance on the PVA assessment of the marital residence was not clearly erroneous. Bhajana was assigned the entire first mortgage debt. In any event, "[i]t is important to bear in mind that a trial court is not obligated to divide the marital property equally. Rather, a trial court need only divide the marital property 'in just proportions.'" *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006) (citations omitted). The division of the HELOC debt was equitable to the parties when viewed in the context of the entire marital estate and consequently it was not an abuse of discretion.

### 3. The jewelry

Sarin's next argument concerns the family court's disposal of Bhajana's jewelry. He contends that the value of the jewelry, which he claims is approximately $30,000, should have been appraised or considered by the court before making an award of maintenance. The family court deemed the jewelry gifted to Bhajana by her parents to be her non-marital property and consequently it was correctly not considered in the division of marital assets. As to the jewelry

given to her by Sarin, Sarin did not provide the court with a timely appraisal of these items, although he had ample opportunity to do so. Consequently, the court's decision not to include this jewelry in the marital estate was not an abuse of discretion.

## 4. The award of maintenance

Next, Sarin argues that the family court erred in awarding maintenance to Bhajana. Maintenance may be awarded only if the family court "finds that the spouse seeking maintenance . . . [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and . . . [i]s unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." KRS 403.200(1). The factors to be considered by the court in determining the amount and duration of maintenance include the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, the time necessary to become sufficiently educated or trained to find employment; the standard of living established during the marriage and the duration of the marriage; the age and condition of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. KRS

-13-

403.200(2). The award of maintenance and the amount are within the discretion of the family court. *Brenzel v. Brenzel*, 244 S.W.3d 121, 126 (Ky. App. 2008).

To support its award of maintenance, the family court found that Bhajana's income and the award of child support would not be sufficient to meet her reasonable needs. It noted that during the 21-year marriage Bhajana was a traditional homemaker and mother. It further noted that she would receive very minimal liquid assets because Sarin had exhausted nearly all of them during the dissolution proceedings. Although she received the largest marital asset, the home, it was also encumbered with the largest debt. As to Sarin, the family court found that his monthly expenses would be greatly reduced in the future as he would not have to travel to India regularly to care for his father. It further found that Sarin controls his own income, choosing to pay himself half the amount he made before voluntarily resigning from his prior employment. The court concluded that Sarin was able to pay his own reasonable expenses as well as maintenance to Bhajana to offset her monthly shortfall "until she is able to establish a more consistent work history, advance in her career, [and] the child reach[es] an age where she requires less supervision and daily care[,] allowing Bhajana increased employment opportunities[.]"

Sarin contends that the family court could not reasonably find that Bhajana lacked sufficient property to provide for her reasonable needs because it

failed to value the non-marital and marital property apportioned to her in its findings. Sarin argues that "income" is not the same as the property apportioned to her. He reiterates that she received a windfall of equity in receiving the marital residence and only half of the HELOC debt. He also claims that the value of her jewelry exceeds the total amount of maintenance Bhajana will receive from him over the next six years. These arguments are based on his contention, which we have already addressed and rejected, that the family court did not accurately value the marital assets or divide them equitably. Bhajana did receive the marital residence, but it was heavily encumbered with debt. Furthermore, she was left with almost no liquid assets as these had been dissipated by Sarin. The family court's award of maintenance is founded on substantial evidence and will not be disturbed on appeal.

## 5. Alleged error in imputing income to Sarin and not deviating from the child support guidelines

Sarin argues that the family court's original findings were erroneous and prejudicial in stating that he founded his new businesses after Bhajana filed the petition for dissolution. This argument is without merit as the family court expressly corrected this error in its amended findings. He further argues that the family court erred in nonetheless imputing income to him of $100,000, even though his annual income was only $50,000. The family court found that Sarin was voluntarily underemployed. This finding is supported by substantial evidence

-15-

as Sarin admits he was earning $100,000 annually but voluntarily resigned that position and now pays himself a salary from his businesses of $50,000.

He further argues that the family court should have deviated from the child support guidelines because he and Bhajana have equal timesharing. He contends that the family court failed to consider that he incurs additional day-to-day expenses as a result of having the minor child in his care half the time. He relies on *Plattner v. Plattner*, which states that "[t]he period of time during which the children reside with each parent may be considered in determining child support, and a relatively equal division of physical custody may constitute valid grounds for deviating from the guidelines." 228 S.W.3d 577, 579 (Ky. App. 2007) (citations omitted). Equal timesharing does not, however, necessarily mandate a deviation from the child support guidelines. The family court imputed income of $100,000 to Sarin. Although he changed employment before Bhajana filed the petition for dissolution, Bhajana testified that he did so without consulting her and without her approval. The guidelines "reflect the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes." *Id*. The family court's decision to impute income to Sarin and apply the guidelines in calculating child support reflects this principle.

## 6. Dissipation of marital assets

Sarin argues that the family court erred in finding that he dissipated the marital assets. "The court may find dissipation when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Brosick v. Brosick*, 974 S.W.2d 498, 500 (Ky. App. 1998). He contends that he incurred many legitimate expenses following the filing of the petition, including the payment of the mortgage and HELOC on the marital residence as ordered by the court; the family's health insurance; travel to India to visit family members who were seriously ill; his children's educational funds; and defending Bhajana's divorce action and criminal allegations in India, the latter allegedly causing him to incur $3,000 in attorney's fees. It is undisputed, however, that Sarin withdrew approximately $135,000 from the couple's joint accounts without Bhajana's knowledge. "A family court is entitled to make its own decisions regarding the demeanor and truthfulness of witnesses[.]" *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007). Sarin does not explain why he withdrew large sums from these accounts without informing Bhajana or seeking her consent. The fact that he did not inform her supports a finding of clear intent to deprive her of her proportionate share of the assets in

-17-

these accounts. The family court's finding of dissipation is fully supported by substantial evidence.

### 7. Attorney's fees

Finally, Sarin contends that the family court abused its discretion in not awarding him his attorney's fees. Sarin claims the fees are warranted because Bhajana needlessly increased the cost and duration of the litigation by pursuing futile legal action in in India. KRS 403.220 provides that the family court "from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees[.]" Sarin argues that the family court abused that discretion in this case by refusing to recognize that the complaints Bhajana filed in India were, in his view, duplicative and unnecessary. According to Bhajana, she suspected that there was marital property in India on the basis of Sarin's statements to her that they owned an apartment in that country and that he had paid for many things for his father and invested money in his father's house.

Our review of the record does not indicate any evidence, beyond Sarin's allegations, of inordinate delay or expense caused by Bhajana's legal actions in India. He has provided no specific evidence that Bhajana's actions were

-18-

unfounded or caused unwarranted expense or delay that would justify an award of attorney's fees.

## Conclusion

For the foregoing reasons, the findings of fact, conclusions of law, amended findings of fact, conclusions of law, and orders of the Fayette Family Court are affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Michael Davidson             Susan S. Kennedy
Lexington, Kentucky            Lexington, Kentucky