RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0890-MR

JULIA PATTON                                                    APPELLANT

v.
APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 21-CI-00282

GERALD PATTON                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Julia Patton appeals from the Greenup Circuit Court's

orders pertaining to the dissolution action filed by her former husband, Gerald

Patton. She also requests that this Court reverse and remand the maintenance

award regarding its duration. We affirm.

The parties were married in late 1991 and separated thirty years later.

The Pattons had no children. Gerald is self-employed at Independent Contractors

Distributors, Inc. (ICD), a company originally owned by Gerald's father but gifted

to Gerald in 2003. Julia received paychecks from ICD although she rarely worked there. The annual salary from ICD for each spouse was $106,000.00. The parties also own Last Chance Farm, comprised of over 300 acres. They additionally own several rental properties. The farm and rental homes are mortgaged. After separation, Julia continued to live on and operate the farm (where the marital home is situated), while Gerald lived elsewhere.

An agreed order was entered in October 2021. Among other provisions, Julia was to receive temporary maintenance of $2,000.00 per week. She was also supposed to collect rent, pay for the upkeep on the farm, and make the mortgage payments on the rental properties once rents were collected. Gerald continued to pay the mortgage, utilities, and normal operating expenses for the house and farm. Julia was given a credit card as well as occasional blank checks with which to keep up with expenses. Her health insurance and out of pocket medical costs were to be paid by Gerald. Both parties agreed not to dissipate marital assets.

The final hearing was held on April 26, 2022. Both parties testified as did an accountant for ICD. The circuit court entered its findings of fact, conclusions of law, and decree of dissolution two months later. Julia appeals.[1]

---

[1] The record indicates the parties have continued to file various motions against each other in the circuit court. Our Opinion only addresses the issues presented before this Court.

Julia first argues that the circuit court erred in the duration of maintenance awarded to her. She specifically insists that $106,000.00 for one year is insufficient to meet her reasonable needs, citing the factors enunciated in Kentucky Revised Statute (KRS) 403.200(2)(a) through (f).[2] Julia specifies these factors as supporting her claim that she is unable to meet her reasonable needs: the length of the marriage (30 years) versus the one-year award of maintenance; the high standard of living enjoyed by the parties; Julia's lack of sufficient financial resources; her age and physical limitations; and Gerald's superior ability to earn

---

[2] KRS 403.200(2) states:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

income.  In other words, Julia insists that she meets all the statutory factors for receiving maintenance, and she requests that the duration of maintenance be extended until she reaches full social security age.  She was 52 years old at the time of dissolution.

"The statutory test for granting maintenance is whether the spouse is unable to support her own reasonable needs through her property, including her part of the marital estate, and is also unable to support herself through suitable employment." *Normandin v. Normandin*, 634 S.W.3d 589, 602 (Ky. 2020), *as modified* (Apr. 29, 2021) (citing KRS 403.200(1)).  An award of maintenance, and the amount and duration thereof, is within the circuit court's sound discretion and will only be disturbed on appeal if the appellate court "finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous." *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003), *as amended* (Aug. 8, 2003); *Brenzel v. Brenzel*, 244 S.W.3d 121, 126 (Ky. App. 2008).  The test for abuse of discretion is whether the decision of the circuit court was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001).  This Court is "not authorized to substitute its own judgment for that of the trial court on the weight of the evidence where the trial court's decision is supported by substantial evidence." *Maclean v. Middleton*, 419 S.W.3d 755, 775 (Ky. App. 2014).  Simply put, the appellate court should

avoid "usurp[ing] the discretion which properly rests in the trial court." *Perrine v. Christine*, 833 S.W.2d 825, 827 (Ky. 1992).

*Gripshover v. Gripshover*, states: "KRS 403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." 246 S.W.3d 460, 469 (Ky. 2008) (quoting *Powell*, 107 S.W.3d at 224). However, it further held:

> We have recognized, however, that the statutory goal of rehabilitation will not always be attainable:
>
> > [I]n situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appear dismal, our courts have declined to follow that policy [rehabilitation] and have instead awarded maintenance for a longer period or in greater amounts.

*Id.* at 470 (quoting *Powell*, 107 S.W.3d at 224).

Here, Julia does not contest the amount of maintenance, only its duration of one year post-decree. But while she maintains that she lacks the education, skills, and physical stamina required to support herself sufficiently, the record speaks otherwise. Julia continues to work the farm and its many demanding obligations. She testified at the final hearing that she graduated from Morehead State University with a four-year degree in animal sciences (even though she

-5-

denies this in her appellate brief). She took a course in phlebotomy but did not finish the certificate (because of her father's death at the time). She lacks several courses of acquiring a welding certificate but admitted that she's able to do her own welding on the farm. In other words, Julia is both educated and skilled, not an "unemployable spouse" unable "to support . . . herself in the current workforce[.]" *Gripshover*, 246 S.W.3d at 469 (citation omitted).

It was Gerald's request to sell all the real property and split the proceeds, but Julia insisted that she wanted to keep Last Chance Farm (which she has renamed as Rising Phoenix Farms), and that she could turn it into a profitable business. Julia acknowledged that the farm had never paid for itself but hoped to make it do so by "selling off some things" and by taking on equine boarding clients (something she claimed that Gerald was never willing to do during the marriage). The circuit court granted Julia's request that she be allowed to keep the farm. It ordered thus:

> [Julia] shall be given the opportunity to refinance the farm and pay-off any outstanding indebtedness on the property and then pay to [Gerald] one-half of the equity. [Julia] shall be given six months in which to refinance and to pay to [Gerald] his share of the equity. If [Julia] cannot complete this transaction within the six-month period, then the property shall be listed for sale and at the time of sale all indebtedness on the property be paid and the parties each receive[] one-half of any equity.
>
> . . . .

The COURT ORDERS that [Julia] be allowed to continue to work for ICD and earn the $106,000.00 per year in salary or [Gerald] may pay [Julia] $106,000.00 a year for one year as maintenance, whichever he prefers. [Julia] should know within that one-year period of time whether or not she will be able to make enough money from her business in order to maintain herself or if she will need to agree to sell the farm and the business. Either way she should have enough money that she could properly and adequately take care of herself.

It was Julia's wish to keep the farm despite its high cost of maintaining, and she had the two years during separation plus an additional year of maintenance to understand the expenses involved. The circuit court took her testimony and the evidence presented by both parties in its award of twelve months' maintenance. The circuit court's decision is supported by substantial evidence. *Maclean*, 419 S.W.3d at 775. We cannot agree with Julia's argument that the circuit court abused its discretion. *Powell*, 107 S.W.3d at 224.

Julia also argues that the circuit court erred in failing to award her an interest in ICD. But the record supports the opposite: The parties had stipulated that ICD was non-marital property, and Julia failed to introduce evidence to the contrary. Furthermore, Julia testified that she rarely if ever worked at ICD and only vaguely referred to any tasks she performed for the company. She did not have the business evaluated. The circuit court relied on the information placed in the record before it, most importantly the Pattons' stipulation that ICD was non-

marital property. Julia cannot now claim that this was erroneous. *Ensor v. Ensor*, 431 S.W.3d 462, 474 (Ky. App. 2013).

Julia next asserts that the division of marital property was inequitable. Again, we disagree. The circuit court divided equally the parties' cash assets and ordered all real property, with the exception of the farm, sold, with the net proceeds divided equally. This distribution satisfies the "just proportions" requirement contained in KRS 403.190(1), even though the court's division of assets is not required to be equally divided. *See Muir v. Muir*, 406 S.W.3d 31, 36 (Ky. App. 2013). And the circuit court's division of the marital property may not be disturbed except for an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 522 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). We decline to set the distribution of assets aside.

Julia's remaining arguments (namely, failure to award her health insurance coverage, reliance on inaccurate facts, and the circuit court's failure to address the issue of her mother's and nephew's homes) are not supported by the record, and we affirm on those issues as well. *Powell*, *supra*.

The judgment of the Greenup Circuit Court is affirmed.


ALL CONCUR.

BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Sharon E. Rowsey                Tracy D. Frye
Ashland, Kentucky              Marie E. Troxler
                                   Russell, Kentucky