RENDERED: JUNE 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2019-CA-1528-MR

GERRY BERNARDO                                             APPELLANT

v.
APPEAL FROM FAYETTE FAMILY COURT
HONORABLE TRACI BRISLIN, JUDGE
ACTION NO. 17-CI-04573

TRISHA BERNARDO                                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Gerry Bernardo appeals the Fayette Family Court's October 7, 2019 Third Amended Findings of Fact and Conclusions of Law which followed a bench trial in this dissolution matter.  We affirm because the family court did not abuse its discretion in awarding maintenance or attorney fees to the wife, Trisha Bernardo.

Gerry and Trisha were married for seventeen years.  They have one child, (K.B.), who is twenty years old and lives with Trisha.  Gerry works as a

physician and earns $280,000.00 annually. After his retirement contributions and taxes, he earns $175,950.00 annually, or $14,662.00 a month. At the time of the bench trial in May 2019, Trisha's year-to-date income was $11,905.52, which averages $3,053.00 per month.

On October 7, 2019, the court entered a decree of dissolution and its Third Amended Findings of Fact and Conclusions of Law. In pertinent part, the family court ruled:

> The marriage between the parties was dissolved and Trisha was restored to her maiden name.
>
> Trisha is unable to support herself through appropriate employment and lacks sufficient property to provide for her needs, while Gerry is able to meet his needs and pay Trisha rehabilitative maintenance until she becomes self-sufficient.
>
> Trisha was awarded one-half of the Gerry's retirement account and is to receive $40,000.00 representing her share of the $80,000.00 that Gerry withdrew from his retirement account.
>
> The marital property is to be sold and the proceeds divided.
>
> Gerry is to pay Trisha $4,029.00 each month at the first of the month for a period not to exceed five and one-half years or until Trisha has completed nursing school, with his maintenance obligation reduced by $750.00 per month after the sale of the marital residence.
>
> Trisha is awarded legal fees in the amount of $10,672.50.

A family court has broad discretion to award spousal maintenance, and this Court will only overturn maintenance awards "if it finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous." *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citations omitted). *See* Kentucky Rules of Civil Procedure (CR) 52.01 (explaining "[f]indings of fact . . . shall not be set aside unless clearly erroneous"). Similarly, a family court's ruling on attorney's fees in a divorce action is subject to review only for an abuse of discretion. *Bootes v. Bootes*, 470 S.W.3d 351, 356 (Ky.App. 2015). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).

Gerry argues that the family court erred by awarding maintenance to Trisha. Maintenance awards are governed by Kentucky Revised Statute (KRS) 403.200. Under this statute, the court must first find that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs. KRS 403.200(1)(a). Second, the court must find that the spouse is unable to support herself through appropriate employment according to the standard of living established during the marriage. KRS 403.200(1)(b). Once that two-part determination is made, the family court considers various factors in setting the

"just" amount and duration of maintenance as set out in relevant part in KRS

403.200(2):

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

*See Gomez v. Gomez*, 168 S.W.3d 51, 57 (Ky.App. 2005).

We examine *seriatim* the family court's findings as to each of these factors in KRS 403.200(2) in determining Trisha's maintenance award. As for factor (a) of KRS 403.200(2), the family court determined that Trisha's rental income and pay results in income of approximately $3,053.00 per month, while Gerry earns a gross income of $280,000.00 annually, or $10,769.23 biweekly. After taxes and retirement contributions, his net income is $175,950.00 annually,

or $14,662.00 monthly. As to factor (b), the family court found that Trisha does not presently have the earnings necessary to meet her reasonable needs, but that she is capable of completing a nursing school program. The family court found that Trisha has an education plan that would allow her to meet her reasonable needs by enrolling in nursing school at the University of Kentucky to obtain a nursing degree. The family court awarded maintenance for up to five and one-half years to allow Trisha to pursue this plan to increase her earning potential.

As to factor (c), the family court found that the parties' standard of living during the marriage was relatively high: "The parties lived a lifestyle during the marriage that is consistent with one spouse being a medical doctor." The family court explained that the couple owned a nice house, went on vacations, and were able to pay their bills. As to factors (d) and (e), the family court stated that the parties were in a long-term marriage of seventeen years, and that Trisha is young and healthy.

Finally, as to factor (f), the family court found that Gerry could meet his reasonable needs while paying maintenance to Trisha. The court concluded that both parties' expenses were reasonable. After the sale of the marital residence, the mortgage on the marital residence will not be a part of Gerry's or Trisha's expenses any longer. In total, Gerry's monthly expenses are $10,377.00, or $8,577.00 when the marital property has been sold. His net monthly income is

$14,662.00 monthly, which leaves $4,285.00 in disposable income. Trisha's expenses are $7,082.00 a month, or $6,332.00 after the marital property is sold. With her monthly income of $3,053.00, she is short $3,279.00 a month. The family court considered each of these factors when making the $4,029.00 maintenance award and properly concluded that Trisha is unable to support herself through appropriate employment and that she lacks sufficient property to provide for her needs. Gerry has sufficient income to pay for his needs and enough disposable income to provide rehabilitative maintenance to Trisha consistent with their standard of living during the marriage and with the aim that Trisha will increase her earning potential and become self-sufficient. *See, e.g.*, *Moss v. Moss*, 639 S.W.2d 370 (Ky.App. 1982) (holding that a limited duration rehabilitative maintenance award to enable the former wife to return to school was appropriate).

Gerry argues that the family court's ruling that Trisha was unable to simultaneously work full-time and go to school full-time was arbitrary because it was based on her having to care for the parties' adult child, K.B., who has autism and requires supervision. The family court considered this argument and found that K.B. is somewhat independent and requires only minimal extra financial support, but that he does require some supervision: "For example, Trisha testified that he can cook a meal, but may forget to turn off the stove." Additionally, Gerry asserts that the majority of Trisha's classroom time for her nursing degree would

-6-

be spent online, which he argues was not considered by the family court. However, the family court fully considered the circumstances, stating: "Working full-time and going to school full-time would make it all but impossible for Trisha to care for herself and K.B., with Gerry being so far away." The court found that requiring Trisha to both work and attend school full-time, as well as supervising K.B., is an unjustified burden, especially when compared with the amount of Gerry's disposable income and ability to provide Trisha with temporary support while she pursues her nursing degree. *See, e.g.*, *Powell*, 107 S.W.3d at 224-26 (holding that requiring one spouse to seek continued education at all was an unjustified burden in light of the salary disparity between the spouses and the physician spouse's ability to pay maintenance).

Next, Gerry argues that the family court's income calculations were arbitrary, and the resulting maintenance award violates KRS 403.200(2)(f). Both Gerry and Trisha testified as to their incomes and both parties supplied their paystubs for the record. The family court evaluated the paystub that Gerry provided and concluded that he makes $280,000.00 annually, or $10,769.23 biweekly. Gerry testified that he can contribute $25,000.00 per year to his retirement account, which reduces his annual income to $255,000.00. After applying his tax bracket to his income, the family court found Gerry's net income to be $175,950.00 annually, or $14,662.00 monthly. As for Trisha, the court used

her year-to-date income of $11,905.52, and divided it by the 3.9 months that the income covered, which averages $3,053.00 per month. Though the court used different methods to calculate Gerry's income compared with Trisha's, it explained these calculations in detail and why it was necessary to extrapolate Trisha's annual income. The family court also used the paystub Gerry offered and considered Gerry's testimony to generate these figures. Thus, Gerry has failed to demonstrate that the family court's findings regarding the income calculations were arbitrary or clearly erroneous under CR 52.01. Gerry has cited no relevant authority to the contrary, and we conclude that the family court's ruling regarding the amount and duration of maintenance awarded to Trisha was not an abuse of discretion.

Gerry next argues that the attorney's fees awarded to Trisha were arbitrary, duplicative, and unsupported by the law. Specifically, Gerry claims that the family court's findings regarding his and his girlfriend's conduct, as well as the family court's calculation of attorney's fees, were punitive. Finally, Gerry argues that the family court sanctioned him by awarding these attorney's fees without affording him due process of law.

Gerry's actions in repeatedly failing to comply with court orders created significant burden and expense for Trisha. His failure to cooperate with court orders necessitated her filing numerous motions to compel Gerry's

compliance. In addition, the conduct of Gerry's girlfriend created considerable delay and expenses for Trisha. The family court found, in relevant part:

> [Gerry] should pay additional amounts due to his conduct and the conduct of his girlfriend, which caused delays in this case. Specifically, his girlfriend posted inappropriate things online about the previous judge, necessitating her recusal. Additionally, the same girlfriend posted things online that caused the real estate agent that the parties agreed to use to refuse the listing. These delays caused considerable headache and expense to Trisha and she should not be required to pay for delays and recusals. While Gerry argues that he is not responsible for his girlfriend's actions, the Court cannot in good conscious [sic] allow his wife to bear the burden of the girlfriend's actions.

KRS Chapter 403 specifically allows for awards of attorney's fees in maintenance cases: "The court . . . after considering the financial resources of both parties[,] may order a party to pay a reasonable amount . . . for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment." KRS 403.220.

This statute requires a consideration of the financial resources of each party: "The statutory language here is plain: after a trial court considers the parties' financial resources, it may order one party to pay a reasonable amount of the other party's attorney's fees." *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). Financial disparity is only a factor for the family court to consider when "looking at the parties' total financial picture." *Id*. Gerry asserts that in stating the

-9-

parties' incomes, the family court included its maintenance award in Trisha's income but failed to subtract the maintenance amount from Gerry's income, resulting in an inflated income figure for Gerry. However, we agree with Trisha that even if Gerry's income were reduced by the $4,029.00 per month maintenance obligation, his income still far exceeds that of Trisha. *See Powell*, 107 S.W.3d at 224 (holding that the trial court abused its discretion in awarding *only* $3,000.00 per month in maintenance "considering Dr. Powell's substantial income and the gross disparity of that income compared with Ms. Powell's potential income"). As such, any error in stating Gerry's or Trisha's income was harmless. *See* CR 61.01 (explaining "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Furthermore, the family court considered Gerry's full financial picture already and in detail in its determination of the maintenance award, and thus its award of attorney's fees was proper under KRS 403.220.

The Kentucky Supreme Court has held that family courts have broad discretion in awarding attorney's fees to discourage conduct that wastes judicial resources and creates unnecessary work and expense for the opposing party. *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). This is so because the "[family] court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or

discourage such conduct." *Id*. Here, Trisha was forced to file numerous motions to compel maintenance payments and action on Gerry's part. The family court thus did not err in its award of attorney's fees or in the amount of fees awarded.

Additionally, these awards of attorney's fees are not punitive, as Gerry asserts, but intended to compensate Trisha. As the family court noted, "[Trisha] should not be required to pay for delays and recusals." The Kentucky Supreme Court has held that KRS 403.220 is "not intended *primarily* to be punitive or sanctioning[,]" but this does not prevent attorney's fees awards based on obstructive or uncooperative behavior. *Rumpel v. Rumpel*, 438 S.W.3d 354, 364 (Ky. 2014) (emphasis added). The *Rumpel* Court stated that KRS 403.220 is meant "to ensure that dissolution . . . proceedings are fair and not skewed in favor of the party in the financially superior position." 438 S.W.3d at 364. Accordingly, the attorney's fees awards were proper and well within the family court's discretion.

Gerry further argues that the family court sanctioned him without due process by awarding Trisha attorney's fees. Procedural due process requires that all parties be given the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (internal quotation marks and citations omitted). To reiterate, the reasons for the award of attorney's fees included Gerry's obstructive

behavior necessitating that Trisha file numerous motions; Gerry's girlfriend's conduct necessitating the previous judge's recusal; and Gerry's girlfriend's conduct in causing the parties' realtor to be unwilling to list the marital property. Gerry claims that there is no evidence of this conduct in the record, but these issues were the subject of numerous motions, hearings, and trial testimony.

In regard to Gerry's girlfriend's conduct necessitating the previous judge's recusal, Gerry's own September 26, 2018 motion to recuse states: "[T]his Court made counsels [sic] aware of Facebook postings made [by] an individual known to [Gerry] on this Court's re-election Facebook page. These postings were highly inflammatory, harshly critical of this Court and made not so subtle threats of reporting this Court for alleged ethical violations." These Facebook posts were attached to the motion and are a part of the record on appeal.

As to Gerry's girlfriend's conduct regarding the realtor, Trisha attached to her May 14, 2019 motion the emails from the realtor detailing the girlfriend's conduct as the reason the realtor refused the listing. Trisha also testified at trial that the realtor that the parties worked with was no longer willing to list the property and that Gerry's girlfriend had made a call to the realtor before the realtor refused to list the property. Gerry's counsel stipulated to Gerry's girlfriend's contact with the realtor after mediation.

Regarding Gerry's own obstructive behavior, during motion hour on August 9, 2019, the family court instructed Gerry that he must pay the maintenance awarded to Trisha or he risked going to jail. The court specifically cautioned Gerry against further noncompliance by explaining that the longer he was uncooperative, the more he would have to pay in attorney's fees. As such, it is clear that the allegations of "game playing," the phrase the previous judge used at a September 14, 2018 motion hour, and obstructive tactics, as well as the numerous delays caused by Gerry and Gerry's girlfriend, were raised by Trisha and argued at length in court proceedings, giving Gerry both notice and the opportunity to refute these allegations and Gerry was given a warning that he would owe additional fees for his obstructive behavior.

Finally, Gerry argues that the family court is forcing him to pay attorney's fees twice because he was ordered to pay Trisha's credit card balance containing her charges for attorney's fees *and* additional amounts for her attorney's fees. He also claims that the family court ordered attorney's fees awards based on motions from June and July of 2019 that resulted in duplicative awards of attorney's fees. The family court's Third Amended Findings of Fact and Conclusions of Law state that the family court calculated its award of attorney's fees "through May 1, 2019." The amount of attorney's fees stated on the record by the family court at the May 23, 2019 trial is the same as in its October 7, 2019

Third Amended Findings of Fact and Conclusions of Law; thus, it is impossible that additional attorney's fees were awarded in the October 7, 2019 order covering that owing for the June and July 2019 motions. The family court separately awarded attorney's fees for the June and July 2019 motions in its order awarding additional attorney's fees on October 10, 2019.

As to the issue of whether the attorney's fees are duplicative based on Gerry's having to pay attorney's fees charged to Trisha's credit card, Gerry's argument spans only two sentences in his brief, and he provides no citations to the record or to specific testimony (other than Trisha's general testimony as to what her expenses were) as evidence to support his claim. We will not comb through the record to find support for Gerry's underdeveloped arguments: "It is not our function as an appellate court to research and construct a party's legal arguments[.]" *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky.App. 2005). *See Prescott v. Commonwealth*, 572 S.W.3d 913, 923 (Ky.App. 2019); *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky.App. 1979). As such, we conclude that the family court's findings of fact regarding attorney's fees were not in error and that the award of attorney's fees was not an abuse of discretion.

For the foregoing reasons, we affirm the Fayette Family Court's Third Amended Findings of Fact and Conclusions of Law.

ALL CONCUR.


BRIEFS FOR APPELLANT:            BRIEF FOR APPELLEE:

Hugh Barrow                      Crystal L. Osborne
D. Susan Martin                  Jill M. Briscoe
Louisville, Kentucky             Lexington, Kentucky