RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1442-MR

SHANNON RAY FERGUSON											APPELLANT

APPEAL FROM KNOX CIRCUIT COURT
v.				HONORABLE MARCUS L. VANOVER, SPECIAL JUDGE
ACTION NO. 18-CI-00446

CHAD TOY FERGUSON											APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Shannon Ray Ferguson appeals from the Knox Circuit Court's order allocating assets between Shannon and Chad Toy Ferguson, a formerly married couple. We reverse the trial court as to the maintenance award (in both the amount and duration), and we reverse the circuit court's division of Chad's retirement account and remand for further consideration of the date of valuation but we affirm the trial court in all other respects.

## FACTS

The parties married in 1994 and had three children, all of whom have reached majority. The parties separated in September 2018. Shannon filed her petition for dissolution of marriage the following month. Besides asking for the marriage to be dissolved and an equitable division of the parties' assets, Shannon further requested temporary maintenance of $2,000.00 per month and temporary possession of the parties' marital residence. The circuit court allowed Shannon to remain in the home. By agreement of the parties, the circuit court fixed temporary maintenance at $750.00 per month, and also ordered Chad to make the mortgage payments and other household bills (including insurance, property taxes, and Shannon's cell phone service). The parties were ordered to attend mediation; the final hearing was scheduled for October 21, 2020.

In the interim, Shannon's attorney passed away. She hired new counsel, who moved to withdraw representation prior to the scheduled final hearing. Shannon was permitted twenty days' time to hire replacement counsel. Subsequent to new counsel's entry of appearance, the matter was rescheduled for final hearing in January 2021 (with mediation to occur before that date), and then the circuit judge, for reasons not stated on the record, disqualified himself.

A special judge was appointed shortly thereafter. He ordered the matter continued, with a status conference to occur in April 2021. The final

hearing was then set for the next month. Before that could occur, Shannon's counsel broke her ankle and requested a continuance of the final hearing. Soon afterward, counsel submitted documentary evidence that Shannon's medical issues made it too difficult to participate in a hearing as well as information concerning mold in the marital residence. Chad took issue with the latter allegation and expressed his frustration over the numerous delays. He requested that the circuit court bifurcate the petition and grant dissolution of the marriage, with all other issues to be heard at a later time.

A hearing was held on May 4, 2021, after which the circuit court entered an order dissolving the marriage and setting the remaining issues for final hearing on October 20, 2021. Shannon's third attorney was permitted to withdraw after Shannon fired her. Shannon represented herself after that; she renewed a pending motion to hold Chad in contempt, addressed the circuit court directly to complain about irregularities in her case, responded to Chad's requests for discovery, and filed a pretrial memorandum. However, less than one week prior to the final hearing, Shannon filed an "emergency motion" to "withdraw" her *pro se* representation; she asked the court to continue the hearing and allow her a reasonable time to find new counsel.

The court denied Shannon's motion for continuance and went forward with the hearing, during which Shannon represented herself. Both parties were

-3-

afforded the opportunity to supplement the record within one week of the hearing date. The final order was entered on November 8, 2021. Shannon, newly represented by a fourth attorney, timely filed a notice of appeal.

**ANALYSIS**

1. MAINTENANCE

Shannon first argues that the circuit court erred in both the amount and the duration of maintenance awarded to her. She specifically insists that $750.00 per month for eighteen (to possibly twenty-four) months is insufficient to meet her reasonable needs, citing the factors enunciated in Kentucky Revised Statute (KRS) 403.200(2)(a) through (f).[1] Shannon asserts that she suffers from

---

[1] KRS 403.200(2) states:

> The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
>
> > (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> >
> > (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> >
> > (c) The standard of living established during the marriage;
> >
> > (d) The duration of the marriage;
> >
> > (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

-4-

100% disability, that she only finished the ninth grade (although she does have a GED certification), and that she has not been a member of the workforce for almost thirty years, having stayed home to be a homemaker and raise the parties' children. She states that the assets allocated to her (namely, $4,000.00 in cash, a 2005 vehicle, half the value of the marital property, and half of Chad's retirement account) are not sufficient to support herself for the rest of her life. Shannon maintains that her reasonable expenses are approximately $2,000.00 to $2,200.00 per month. She further contends that Chad makes ample pay to support both her and his new household.

"The statutory test for granting maintenance is whether the spouse is unable to support her own reasonable needs through her property, including her part of the marital estate, and is also unable to support herself through suitable employment." *Normandin v. Normandin*, 634 S.W.3d 589, 602 (Ky. 2020), *as modified and superseded on denial of reh'g* (Apr. 29, 2021) (citing KRS 403.200(1)). An award of maintenance, and the amount and duration thereof, is within the circuit court's sound discretion and will only be disturbed on appeal if the appellate court "finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous." *Powell v. Powell*, 107 S.W.3d 222,

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

224 (Ky. 2003). The test for abuse of discretion is whether the decision of the circuit court was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001). This Court is "not authorized to substitute its own judgment for that of the trial court on the weight of the evidence where the trial court's decision is supported by substantial evidence." *Maclean v. Middleton*, 419 S.W.3d 755, 775 (Ky. App. 2014). Simply put, the appellate court should avoid "usurp[ing] the discretion which properly rests in the trial court." *Perrine v. Christine*, 833 S.W.2d 825, 827 (Ky. 1992).

While the trial court is afforded a wide range of discretion in determining maintenance awards, it is also true that this discretion is not without boundaries. As we have aptly stated:

> Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005) (footnote omitted).

While the findings of fact made by the trial court were limited, there appears to be the findings necessary for determining if an award of maintenance is indicated. A trial court may grant a maintenance order for either spouse only if it

-6-

finds, pursuant to KRS 403.200(1), that the spouse seeking maintenance: "(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) Is unable to support himself through appropriate employment . . . ." In any case, the fact that Shannon is actually entitled to an award of maintenance is not disputed by either party, and is supported by the record.

It is the amount and duration of that award that is questioned. In that regard, the trial court abused its discretion. While the appellate court is not free to simply substitute its judgment for that of the trial court, it is also not free to simply ignore the trial court's own findings and ignore reasoned analysis and application of the relevant statute.

Upon finding that maintenance should be granted under KRS 403.200(1), section (2) states:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
>
> > (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> >
> > (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Again, while the findings of fact by the trial court are somewhat sparse, the basic findings required are that the recipient spouse lacks sufficient property to provide for his/her reasonable needs and cannot support him/herself through appropriate employment. *Drake v. Drake*, 721 S.W.2d 728, 730 (Ky. App. 1986).[2] Detailed findings regarding each relevant factor described in KRS 403.200(2) are not necessarily required.

Even so, when the KRS 403.200(2) factors are considered, based on the findings of fact the trial court did make in its order, then it is baffling how a maintenance award of $750 per month is anything other than unfair and unreasonable, the very definition of abuse of discretion. Also baffling is how the

---

[2] In *Drake*, this Court stated: "Kentucky law is clear that in order for an award of maintenance to be proper, the elements of both KRS 403.200(2)(a) and (b) must be established. In other words, there must first be a finding that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for his reasonable needs. Secondly, that spouse must be unable to support himself through appropriate employment according to the standard of living established during the marriage." *Id.* at 730. However, it appears that we mistakenly cited KRS 403.200(2)(a) and (b) in *Drake*; it is actually KRS 403.200(1)(a) and (b) which refers to these two basic elements required for an award of maintenance.

duration of the maintenance award, for 18 months, or 24 months if Shannon applies for disability, especially given this lengthy 27-year marriage, is anything other than arbitrary; again, the very definition of an abuse of discretion.

In today's economy, $750 would not even cover a subsistence standard of living. And although there were no specific findings of facts made by the trial court as to the standard of living maintained during the marriage, there can be no reasonable doubt that it was significantly greater than bare subsistence.

While the court did not make specific findings as to the actual amount of income Shannon would need to meet her reasonable needs, and whether Chad had sufficient income to support Shannon's need while meeting his own needs, that fact is easily found in the parties' temporary maintenance agreement which the court referenced in its order. In the agreement, Shannon stayed exclusively in the marital home even though Chad continued to pay the mortgage. Chad also continued to pay the household bills and Shannon's cell phone bill, while paying Shannon $750 per month in additional maintenance.

The trial court found that Chad made approximately $5,700 per month and had been paying Shannon's necessary expenses, and $750 per month in maintenance, by agreement, through the pendency of the divorce. There was no finding, nor any argument made, that Chad was unable to meet his own reasonable needs while paying these expenses or this maintenance. Further, Shannon testified

that she expected to need $2,000 to $2,200 per month to meet her reasonable needs going forward as she would have to provide her own housing and household expenses. There was no evidence presented to dispute this amount.

Also, Shannon has no real means of her own to support herself. The evidence supports the family court's finding that Shannon has always relied on Chad for support. She lacks post-secondary education and has a G.E.D. She has been deemed 100% disabled by her doctor. She currently has no source of income and was awarded liquid assets of only $4000 and her 2005 truck from the marital property.

While she was also awarded half of Chad's retirement, to be divided via a QDRO,[3] she should not have to drain funds needed for her future to survive now. Shannon is only in her early fifties and could easily live significantly longer. Retirement funds should not be deemed a readily available source of income for Shannon to meet her present-day needs. *See Naramore v. Naramore*, 611 S.W.3d 281, 288 (Ky. App. 2020). *See also Daunhauer v. Daunhauer*, 295 S.W.3d 154, 159 (Ky. App. 2009) (noting in dicta that retirement accounts are generally intended to meet future needs in retirement rather than current needs for employed persons) and *Smith v. Smith*, 503 S.W.3d 178, 185-86 (Ky. App. 2016) (noting argument about the tax penalty consequences of withdrawing funds from

---

[3] Qualified domestic relations order.

-10-

retirement accounts in upholding maintenance award for ex-wife who received a share of ex-husband's retirement accounts.).

An award of maintenance of only $750 per month for a 27-year marriage, where the spouse needing maintenance was the homemaker, primary caregiver of the parties' now grown children, and is otherwise disabled, is an abuse of discretion. That the award should terminate after 18 months, or 24 months if Shannon applies for social security disability, is arbitrary and a further abuse of discretion.

In *Gripshover v. Gripshover*, our Supreme Court held that "KRS 403.200 seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." 246 S.W.3d 460, 469 (Ky. 2008) (quoting *Powell*, 107 S.W.3d at 224). However, it further held:

> We have recognized, however, that the statutory goal of rehabilitation will not always be attainable:
>
> > [I]n situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appear dismal, our courts have declined to follow that policy [rehabilitation] and have instead awarded maintenance for a longer period or in greater amounts.

*Gripshover*, 246 S.W.3d at 470 (quoting *Powell*, 107 S.W.3d at 224).

-11-

Perhaps it was the trial court's intent, and certainly it is Chad's argument, that Shannon's maintenance award should be ultimately ended because she may be eligible for social security disability payments. And she may well be. However, our statutory scheme already accounts for that contingency. While it may not be out of order for the trial court to order Shannon to apply for social security disability benefits, since it has made a finding that she is disabled and unable to work, to reduce the amount and duration of her maintenance award based on the speculation of what she might receive and when, is an abuse of discretion. Should Shannon's ability to provide for her own needs improve, whether via an award of social security disability or other windfall, "KRS 403.250 and the civil rules provide for mechanisms by which the maintenance award can be reduced or eliminated." *Calloway v. Calloway*, 832 S.W.2d 890, 894 (Ky. App. 1992). However, on remand, the court shall enter an order of maintenance in an amount and duration that considers all factors of KRS 403.200(2).

2. PENSION

We affirm the circuit court's 50% division of Chad's pension but reverse and remand on the issue of whether the date of the pension's valuation should be the date of the parties' separation or the date dissolution was granted. In *Thielmeier v. Thielmeier*, ___ S.W.3d ___, No. 2021-SC-0532-DG, 2022 WL 17726617 (Ky. 2022), the Kentucky Supreme Court clearly held that a party's

401(k) (a type of retirement account) had to be valued as of the date of the divorce for purposes of determining the value of the marital estate, but that the family court had discretion to divide the marital estate in just proportions (not necessarily evenly) and also a duty to make findings explaining why its division was just under KRS 403.190:

> When dividing martial [sic] property in a dissolution proceeding, a trial court must perform the following steps: (1) categorize each piece of contested property as either marital or nonmarital; (2) assign each party's nonmarital property to that party; and (3) equitably divide the parties' marital property. Trial courts have broad discretion in dividing marital property, and this Court may not disturb a trial court's ruling on the division of marital property unless it has abused its discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

> Here, it was undisputed that Ken's ACE 401(k) was marital property. The circuit court noted at the outset in its findings of fact and conclusions of law that "[t]he parties stipulate that all of their property is marital," except for a non-marital piece of real estate that is not at issue. Even absent such a stipulation, the account was without question martial [sic] property under KRS 403.190 and applicable case law. Accordingly, the circuit court first erred by dividing the ACE 401(k) as of May 1, 2017. Instead, it should have divided it as of December 19, 2019, the date of the divorce decree.

> The circuit court further erred in awarding Lisa nothing of the contributions Ken made to the 401(k) account after separation. The court agreed with Ken "that KRS 403.190(1)(a) permits him to retain 100% of

-13-

the post-separation to his 401(k) contributions." But it did not engage in any analysis as to why it considered that division just under the facts before it. This alone is grounds for reversal, as a trial court must actually engage with the KRS 403.190(1) factors when dividing martial [sic] property; simply citing the statute is not enough.

*Id.* at \*7 (footnotes omitted).

Our Supreme Court further directed: "On remand, the circuit court shall readdress the division of the . . . 401(k) as of . . . the date the divorce decree was entered, and shall explain why its chosen division is just under KRS 403.190(1)(a)-(d)."[4] *Id*. at \*8.

In *Thielmeier*, the wife remained at home caring for a minor child, which may work to distinguish the Fergusons' situation. However, the unique circumstances in this case (the wife's automobile accident which required a year's

---

[4] KRS 403.190(1) states, in relevant part:

(1) In a proceeding for dissolution of the marriage or for legal separation, . . . the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

-14-

stay at the Mayo Clinic in Minnesota, the pandemic shutdown which had an impact over the court system, the death of the wife's first attorney, and the recusal of the original presiding judge) should weigh in the circuit court's reconsideration of this issue regarding the date the pension should be divided.

Furthermore, the date of valuation used by the circuit court (December 2018) was the date temporary maintenance was established, not the date of the parties' separation. The circuit court made no finding regarding its use of that date rather than separation (September 2018), dissolution of marriage (May 2021), or the final hearing (October 2021).

Generally, precedent indicates that pensions should be valued as of the date of divorce rather than as of other dates, such as the date of a QDRO. *See Clark v. Clark*, 782 S.W.2d 56, 62 (Ky. App. 1990). But a circuit court has discretion to divide pensions, like other marital property, in just proportions so long as it explains why its division is just in light of the factors mentioned in KRS 403.190(1)(a)-(d). *See Thielmeier*, 2022 WL 17726617, at *7-8.

On remand, we direct the circuit court to divide equally the pension as valued on the date of dissolution unless the court makes a finding why it is just to effectively divide the pension as of another date – such as explaining why it is just not to give Shannon the benefit of Chad's post-separation contributions to his pension with specific findings discussing KRS 403.190(1) factors. *See id*. The

presumption is that property acquired before a decree of dissolution or legal separation is marital and must be overcome by showing that a portion of the pension was acquired by a method listed in KRS 403.190(2). *See* KRS 403.190(3). So, the circuit court must divide the pension equally as of the date of the divorce or must explain why its division as of another date is just under KRS 403.190(1)(a)-(d). *See Thielmeier*, 2022 WL 17726617, at *8.

The judgment of the Knox Circuit Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Lori B. Shelburne
Lexington, Kentucky

BRIEF FOR APPELLEE:

Shane A. Romines
Corbin, Kentucky